**JM MECHANICAL CORPORATION, a New York corporation, Appellant,**

v.

**The UNITED STATES of America, By its agent, the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Appellee.**

No. 82–5437.

United States Court of Appeals, Third Circuit.

Argued April 26, 1983.

Decided Sept. 2, 1983.

Martin H. Cowen (argued), Slavitt, Fiah & Cowen, Newark, N.J., for appellant.

Bette E. Uhrmacher (argued), W. Hunt Dumont, U.S. Atty., Samuel Rosenthal, Chief of Appeals, Trenton, N.J., for appellee.

Before HUNTER and HIGGINBOTHAM, Circuit Judges, and STAPLETON,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is an appeal from a final order of the United States District Court for the District of New Jersey granting the United States Department of Housing and Urban Development's ("HUD") motion to dismiss the complaint of the JM Mechanical Corp. ("JM"), based on the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680 (1976), against HUD under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and dismissing the case with prejudice. We will reverse and remand.

I

HUD was the insurer of a mortgage on a project known as Corinthian Towers, pursuant to § 221(d)(4) of the National Housing Act of 1934, 12 U.S.C. § 1715*l*(d)(4) (1976 & Supp. V 1981). *See also* 24 C.F.R. § 221 (1982); App. at A2. The purpose of that section of the Act is to "assist private industry in providing housing for low and moderate income families and displaced families." 12 U.S.C. § 1715*l*(a) (1976). As insurer of the mortgage, HUD could, in its discretion,

* Honorable Walter K. Stapleton, United States District Judge for the District of Delaware, sit-

acquire the mortgage from a lender upon a default by the mortgagor. 12 U.S.C. § 1715*l*(g)(3) (1976); *see also* 12 U.S.C. § 1715*l*(g)(1), (2) (1976). Pursuant to HUD regulations the mortgagor must furnish assurances of completion of the project, which include corporate surety bonds for payment and performance. All surety companies issuing such bonds must be satisfactory to HUD. 24 C.F.R. § 221.542(a) (1982); *see* App. at A23.

The mortgagor and owner of the Corinthian Towers project was 67 Corinthian Associates. The general contractor was Index Construction Company. Index obtained payment and performance bonds for the project which listed Fidelity and Deposit Company of Maryland as surety. Those bonds were dated November 27, 1978. Thereafter, on June 20, 1980, Index defaulted under the terms of its construction contract causing all work on the project to cease.

HUD had learned on February 7, 1979, that Fidelity and Deposit Company of Maryland, the alleged surety of the payment and performance bonds, denied the validity of the bonds. The revelation occurred after construction had begun but before JM became a subcontractor on the project. HUD allowed construction to continue without the required assurances of payment. It informed no one of this turn of events. However, by letter dated October 15, 1980 it explained its actions as follows:

> You are correct that HUD regulations require the provision of a payment and performance bond on every project in excess of $500,000 where HUD mortgage insurance involved. In the case of Corinthian Towers, our bonding requirements were met at the time of the initial loan closing. Subsequently, during construction, it became apparent that the bond that had been presented to the Department was a forgery and was not valid. Our review of the situation at that

ting by designation.

time indicated that none of the parties to the insured transaction were culpable in providing the fraudulent bond. Since the developer was not able to obtain a replacement bond at that point, HUD had no viable alternative but to allow construction to proceed without the normal performance and payment bond.

Letter from Lawrence B. Simons, Assistant Secretary, HUD, to Herbert Hoffman, Executive Vice President, Subcontractor's Trade Ass'n (October 15, 1980), *reprinted* in App. at A28.

JM became a heating, ventilating and air conditioning system subcontractor on the Corinthian Towers Project on May 29, 1979. JM had previously worked on HUD funded projects, as well as with the principals of Index. While JM had no direct contacts with HUD, JM alleged in its complaint that the principals of Index had represented to JM that Index had "acquired payment and performance bonds from a reputable bonding company and that these bonds had been reviewed and approved by the defendant HUD." JM began work on the project unaware of the absence of valid surety bonds. Thereafter Index breached its contractual commitment before JM was fully paid for the work performed. It was only after the default, when work on the project was halted, that JM learned from Index that the bonding on the project was allegedly counterfeit.

In an effort to secure payment, JM filed suit against Index in New Jersey state court. A judgment was entered against Index for the balance due JM in the amount of $78,880.02 together with interest. That judgment remains unsatisfied. *JM Mechanical Corp. v. Index Construction Co.,* Nos. L–67474–80, J–13,647–81 (N.J.Super. Ct.Law Div.1981).

Thereafter, on January 25, 1982, JM filed suit against HUD for the $78,880.02 it had yet to recover from Index. JM alleged in its complaint that "defendant HUD represented that it guaranteed the mortgage on the project and that the general contractor complied with its rules and regulations including the posting of appropriate payment and performance bonds," Complaint ¶ 5, and that JM "relied upon the aforesaid assurance of the defendant HUD and entered into its contract with the general contractor," Complaint ¶ 6.

JM further stated three other claims in its Complaint:

9. The defendant HUD was negligent in its investigation and verification of the payment and performance bonds, was negligent in the enforcement of its own regulations, was negligent in failing to notify subcontractors that the bonds had been declared counterfeit and was negligent in failing to secure another surety bond or other assurances of payment as required by Federal Regulations.

10. As a direct and proximate result of the aforesaid, there is a balance due to the plaintiff on its contract in the amount of $78,880.02 which was the reasonable value of the labor and materials devoted for which the plaintiff has not been paid. WHEREFORE, plaintiff demands Judgment against the defendant HUD for the sum of $78,880.02 together with interest, counsel fee and costs of suit.

Complaint ¶¶ 9, 10.

On June 14, 1982, HUD moved for summary judgment to dismiss the complaint alleging that any wrongful conduct on the government's part fell within the exception to the availability of a cause of action for damages pursuant to the FTCA involving actions for misrepresentation, 28 U.S.C. § 2680(h) (1976). That section provides in relevant part:

§ 2680. Exceptions

The provisions of this chapter and section 1346(b) of this title shall not apply to—

\*   \*   \*   \*   \*   \*

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. . . .

28 U.S.C. § 2680(h) (1976).

At the hearing on HUD's motion counsel for JM agreed with the court that the reason for the suit against the government was

JM's belief that HUD "should have told it that the bonds were no good." App. at A36. However, JM, also contended that "what we have is a reliance on the rules and regulations of HUD setting forth that there are to be payment and performance bonds for this particular project." App. at A38.

"The negligent performance of an operational task—" and that's what we have in our case before your Honor, a task that has been dictated by statutory regulations of HUD as applies to this particular type of project, and that is to make sure there is a payment and performance bond.

Having failed to achieve that responsibility or having learned that the bond was ineffective, and having assumed some responsibility for the supervision and the inspection of the project as it proceeded, especially as it related to the requisition and the disbursal of funds for the subcontractors, we believe that HUD breached its responsibility of using due care on behalf of the contractors and therefore has violated the standard and made itself liable for the damages that have been incurred by the plaintiff.

App. at A40.

The government argued that no matter how JM attempted to characterize its action, the complaint was an action for injuries resulting from a negligent misrepresentation by omission of the government. As such, a suit for recovery under the FTCA was barred by 28 U.S.C. § 2680(h) (1976). *See United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

The district court concluded that JM's claim was one for misrepresentation and that it fell within the misrepresentation exception to the FTCA, and thus the court granted HUD's motion to dismiss. This appeal followed.

## II

### A

On appeal both JM and HUD renew the arguments they made before the district court. The government further argues that even if a non-misrepresentation claim arose out of the transaction, where the "government's misrepresentation of a material fact is just one of the factors relied upon to maintain the suit for economic injury," then the "claim arises out of misrepresentation." A review of the cases makes plain that the government's arguments are incorrect and that subject matter jurisdiction exists in this case.

The Supreme Court in *Block v. Neal,* ——— U.S. ———, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), restated the principles to be used in determining the applicability of the 28 U.S.C. § 2680(h) (1976) misrepresentation "exception" to otherwise assertable causes of action under the FTCA. In that case Neal contracted with Home Marketing Associates (HMA) for the construction of a prefabricated house which required HMA's work to conform to plans approved by Farmers Home Administration ("FmHA"). It also granted FmHA the right to inspect and test all materials and workmanship and reject any that were defective. Neal simultaneously entered into a deed of trust with FmHA and signed a promissory note to cover the construction expenses.

During construction an FmHA official inspected the site three times. After the last inspection, the official issued a final report, signed by Neal, which indicated that the construction accorded with the drawings and specifications approved by FmHA. However, after Neal moved into the house she discovered certain defects in construction. Upon inspection by FmHA officials, 13 such defects, including deviations from approved plans were found. HMA refused to comply with FmHA's request to repair the defects. FmHA refused Neal's demand to pay for the corrections. *See* 103 S.Ct. at 1091.

Neal's suit was dismissed by the district court on a motion to dismiss for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). It found that the government did not have a contractual duty to supervise construction of Neal's house under federal law or the FmHA regulations, and found that no claim existed under applicable tort law. The

United States Court for the Sixth Circuit reversed. *Neal v. Bergland,* 646 F.2d 1178 (6th Cir.1981). It found that the government could be held liable for negligence in performing a voluntary action, and therefore held that 28 U.S.C. § 2680(h) (1976) was inapplicable and that *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), was distinguishable. 646 F.2d at 1181–82.

The Supreme Court, in affirming the decision of the court of appeals, redefined the nature and extent of the misrepresentation exception. The Court limited the applicability of *Neustadt* by concluding that 28 U.S.C. § 2680(h) (1976) barred an action for recovery under the FTCA only when a party alleged *no* injury that he would have suffered independently of his reliance on a misrepresentation or an omission. The Court explained that:

> Section 2680(h) thus relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatement. As a result, the statutory exception undoubtedly preserves sovereign immunity with respect to a broad range of government action. *But it does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty.*

*Block v. Neal,* 103 S.Ct. at 1093–94 (emphasis supplied) (footnote omitted).

The Court concluded that only where it appears beyond doubt that the only damages alleged in the complaint were caused by the government's failure to use due care in communicating information, could the complaint be dismissed on the basis of section 2680(h). *Id.* at 1094. Further, the Court made it clear that the fact that a misrepresentation claim could also have been brought on the basis of the transaction or occurrence giving rise to the negligence action is no bar to the bringing of the negligence claim. The partial overlap between the two tort actions cannot support the conclusion that if one is excepted under the FTCA, the other must be as well. As the Court reasoned:

> Neither the language nor history of the Act suggest that when one aspect of the Government's conduct is not actionable under the "misrepresentation" exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the Government's conduct. " 'The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.' " *United States v. Aetna Surety Co.,* 338 U.S. 366, 383 [70 S.Ct. 207, 216, 94 L.Ed. 171] (1949), quoting *Anderson v. Hayes Constr. Co.,* 243 N.Y. 140, 147, 153 N.E. 28, 29–30 (1926) (Cardozo, J.). Any other interpretation would encourage the Government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits.

*Id.* at 1094.

■ In the wake of *Block v. Neal,* it is now clear that where recovery is sought on the basis of a breach of a governmental duty to perform certain acts, and not on the basis of misstatements or communications made or not made by the government, section 2680(h) may not be invoked to bar the action. The fact that there may be overlap between the tort of misrepresentation and the tort of negligence cannot be used to foreclose assertion of the latter.

We have recently stated that "misrepresentation and negligence claims often have certain factual and legal questions in common. . . . Indeed, although a negligence claim may include an element of reliance, that element might constitute misrepresentation only in the genuine sense of the word." *Cross Brothers Meat Packers, Inc. v. United States,* 705 F.2d 682 at 684 (3d Cir.1983) (complaint alleging negligent supervision and grading of meat not foreclosed under 28 U.S.C. § 2680(h) (1976)). If the government's negligence in communicating information is not essential to the negligence claim, if the claim is non-frivolous,

and if the factual allegations would be consistent with proof at trial that the injury was caused by this negligence, then the court has subject matter jurisdiction over the action.

### B

■ Applying the principles of *Block v. Neal* to this case, it is clear that the district court erred in dismissing the complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). JM alleges in its complaint that the Government had a duty, under its regulations, to investigate and verify the validity of payment and performance bonds, had a duty to notify subcontractors of any deficiencies, and had a duty to secure other surety bonds or other assurances of payment upon determining that the originally accepted bonds were counterfeit. Complaint ¶ 9. It contends that the regulations imposing these duties on the government were intended to benefit subcontractors like JM. Finally, JM alleges that the government's failure to secure other surety bonds or other assurances of payment after February 7, 1979, when it found out that the original bonds were counterfeit, directly and proximately caused it damage in the amount of $78,880.02. Complaint ¶ 10.

The above recitation makes clear that recovery is sought on the basis of a duty by the government to perform certain actions—secure valid performance and payment bonds on projects for which it guarantees a mortgage. The Government's failure to communicate the fact of the failure of the bonds to subcontractors after February 7, 1979, while itself giving rise to a possible action in misrepresentation, is not essential to JM's claim. JM's claim is based on the failure of the government to secure new bonds, not on the government's failure to tell JM of the failure of the original bonds.

Moreover, JM's factual allegation would be consistent with proof at trial that JM's injury was caused by the government's negligence in failing to secure replacement performance and payment bonds. Thus JM alleges, and the government admits, App. at A16, that HUD had guaranteed the mortgage on the bonds. Complaint ¶ 5, App. at A2. That guarantee, JM asserts, gave rise to the duty to secure valid bonds, which duty the government failed to perform. That duty was owed to subcontractors who rely on the government to follow its own regulations for the protection of the subcontractors. Complaint ¶ 5. Further JM alleges that HUD was negligent, contending that HUD knew the bonds were invalid but failed to secure new valid bonds. Complaint ¶¶ 8, 9. Finally JM alleges that the government's negligent breach was the proximate cause of its injury. Complaint ¶ 10.

Thus JM has made a valid claim under the FTCA. While that claim may fail at trial, JM has, under the principles enunciated in *Block v. Neal,* put forth a claim that is not barred by 28 U.S.C. § 2680(h) (1976) in as much as JM "does not seek to recover on the basis of misstatement made by [HUD] officials." *Block v. Neal,* 103 S.Ct. at 1094. Thus the district court had subject matter jurisdiction over the claim and erred in granting the government's motion to dismiss under Fed.R.Civ.P. 12(b)(1).[1]

---

1. JM's complaint can be read to state four claims: (1) "HUD represented ... that the general contractor complied with its rules and regulations including the posting of appropriate payment and performance bonds" and "Plaintiff relied upon the aforesaid assurances" when entering its contract, Complaint ¶¶ 5, 6; (2) "HUD was negligent in its investigation and verification of the payment and performance bonds" and "was negligent in the enforcement of its own regulations" concerning such bonds, Complaint ¶ 9; (3) HUD "was negligent in failing to notify subcontractors that the bonds had been declared counterfeit." Complaint ¶ 9; and (4) HUD "was negligent in failing to secure another surety bond or other assurance of payment." Complaint ¶ 9.

As an initial matter, it is plain that claims (1) and (3) are misrepresentation claims which may not be brought under the Federal Tort Claims Act. Claim (1) is a straightforward misrepresentation claim. Claim (3) is a claim that HUD, by its silence, in effect misrepresented to JM that the HUD financed Corinthian Towers project would be bonded.

Claim (2) and claim (4), however, are not misrepresentation claims under the rationale of *Block v. Neal,* —— U.S. ——, 103 S.Ct. 1089, 75

Of course, in the absence of the "misrepresentation" exception to the FTCA, JM also could have pursued its claims for negligent misrepresentation. Indeed, the government goes to great lengths to prove that a claim for negligent misrepresentation is the only claim which could be brought in this case, or, at least that a claim for negligent misrepresentation is the principal claim arising from the transaction causing JM's injuries. The government argues that because the misrepresentation aspect of the government's conduct is not actionable under section 2680(h), JM is barred from asserting any claim arising from other aspects of the government's conduct. However, as the Supreme Court made clear, the fact that a party could bring a misrepresentation claim is no bar to the assertion of other valid claims arising from the same transaction or occurrence. "Any other interpretation would encourage the government to shield itself completely from tort liability by adding misrepresentations to whatever other actionable torts it commits." *Block v. Neal,* 103 S.Ct. at 1094; *Cross Brothers Meat Packers,* 705 F.2d at 684.

JM's claim that the government owed a duty to subcontractors to secure valid bonds after it discovered that the original bonds were invalid, and that its failure to secure such bonds after February 7, 1979, proximately caused the injury to JM bears a stronger resemblance to the nature of the tort in *Block* than that in *Neustadt.* Thus *Block v. Neal* and *Cross Brothers Meat Packers* necessarily foreclose HUD's misrepresentation defense as to this claim under 28 U.S.C. § 2680(h) (1976).

L.Ed.2d 67 (1983). Both claims involve allegations that HUD had a duty and negligently performed that duty. Consequently, we deal only with claims (2) and (4) in this opinion.

2. The government also asserts that JM characterizes its complaint as an action for negligence based on the breach of the government's duty to maintain valid bonds on projects only for the first time on appeal and thus should not be considered by us. There are two short answers to that argument. First, because the issue in this case touches on the jurisdiction of the courts to hear the case, any argument supporting jurisdiction may be raised at any point in

## III

One further argument advanced by HUD in support of the decision below merits discussion.[2] HUD argues, seemingly in the alternative, that JM is precluded from advancing the argument that the government owed JM any duty to secure replacement bonds after it determined that the originally approved bonds were invalid, because the district court specifically determined that such a duty did not exist in favor of JM.

In this case, the government moved, and the district court granted the motion, to dismiss JM's claim for lack of jurisdiction over the subject matter pursuant to Fed.R. Civ.P. 12(b)(1). The objection presented by such a motion is that the court has no authority to hear and decide the case. While the parties may use affidavits and any other material to support or defend from this motion, *Local 336 v. Bonatz,* 475 F.2d 433 (3d Cir.1973), a motion under Rule 12(b)(1) should not be confused with a motion under Rule 12(b)(6) to dismiss for failure to state a claim for relief under federal law. *See Johnsrud v. Carter,* 620 F.2d 29, 32–3 (3d Cir.1980).

The merits of a claim may be tested at the pleading stage by a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Murphy v. Inexco Oil Co.,* 611 F.2d 570, 573 (5th Cir.1980); *see Johnsrud,* 620 F.2d at 32–33. However, even if a district court treats a Rule 12(b)(1) motion, in the alternative, as a Rule 12(b)(6) motion, *but see Johnsrud,* 620 F.2d at 32–33, it may be so treated only where the motion is measured against the bare allegations of

the proceedings. Thus, even assuming that JM argues this point for the first time on appeal, this court may consider the argument. *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Second, a reading of the transcript of the hearing before the district court makes plain that this issue was presented and argued by JM. *See* Trial Transcript, App. at A37–8, A40, A45. As such, the issue of the proper characterization of JM's complaint is properly before this court and may be considered in reviewing the order of the district court.

the complaint. *See Murphy,* 611 F.2d at 573.

If matters outside the bounds of the complaint are considered by the district court, the merits of the claim must be tested by way of motion for summary judgment. *See* Fed.R.Civ.P. 12(b). In that event, even if a motion to dismiss pursuant to Rule 12(b)(6) has been properly interposed, the court must convert it into a summary judgment proceeding and afford the plaintiff a reasonable opportunity to present all material made pertinent to a summary judgment motion by Rule 56. *See Murphy,* 611 F.2d at 573; Fed.R.Civ.P. 12(b); 5 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 1366 (1975). Were the district court to fail to convert the Rule 12(b)(6) motion into a motion for summary judgment, any determination made by the district court pursuant to Rule 12(b)(6) could not stand. *See Murphy,* 611 F.2d at 573; *see also Johnsrud,* 620 F.2d at 33.

In this case, the government moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(1). The district court, however, treated the motion in the alternative as a motion for dismissal pursuant to Rule 12(b)(6). After reviewing the submissions of record, including affidavits introduced by the parties, the district court determined that JM's claim was not actionable.

> If this were actionable as some kind of tort other than willful or negligent misrepresentation, I think a basis for suit would arise that is far beyond anything that Congress had in mind....
>
> I have searched for and found no case in which a construction lender, a private construction lender was ever held liable to any supplier or subcontractor for any money other than what was due under the construction loan commitment in compliance with its terms, certainly not for a defect, not of its own making, such as the falsity or fraudulent or forged character of performance bonds.

The government's motion is well taken and it will be granted. Submit an order. App. at A49–A50.

■ It may well be that JM's contention that the government, by guaranteeing certain mortgage notes, assumes a duty to maintain valid surety bonds for the benefit of subcontractors during the life of the project, is incorrect. However, the district court chose to consider matters outside the bounds of the complaint in making its findings on the legal sufficiency of the claim. Absent conversion of the motion to one for summary judgment, the district court was not free to make such findings. It was therefore error for the district court to grant the government's motion, in the alternative, for failure to state a claim. *Johnsrud,* 620 F.2d at 33; *Murphy,* 611 F.2d at 573.[3]

## IV

The order of the district court granting HUD's motion to dismiss will be reversed with respect to JM's claim that HUD was negligent in its investigation and verification of the payment and performance bonds or enforcement of its regulations concerning such bonds, and that HUD was negligent in failing to secure another surety bond or other assurance of payment. The case will be remanded for proceedings consistent with this opinion.

---

**3.** On remand, of course, the government is free to file a timely motion for summary judgment under Fed.R.Civ.P. 56. We express no view as to the merits of any determination made pursuant to such motion. *Cf.* note 1 *supra.*