Robert D. ADAM, et al., Appellees,

v.

MOUNT PLEASANT BANK AND TRUST COMPANY, et al., Defendants,

State of Iowa, Appellant.

No. 68514.

Supreme Court of Iowa.

Nov. 23, 1983.

Thomas J. Miller, Atty. Gen., John R. Scott and Iris J. Post, Asst. Attys. Gen., Daniel J. Fay, Asst. Commerce Counsel, and Mark E. Schantz, Des Moines, for appellant.

James P. Hoffman of James Hoffman Law Offices, Keokuk, and James Walker, Bloomington, Ill., for appellees.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and McGIVERIN, JJ.

McCORMICK, Justice.

In this appeal we revisit the misrepresentation exception in the Iowa Tort Claims Act, first addressed in *Hubbard v. State*, 163 N.W.2d 904 (Iowa 1969). Plaintiffs are farmers who lost grain when the Prairie Grain Company of Stockport went bankrupt. They brought the present action against the State and other parties in an effort to recover the value of their grain. They characterize their action against the State as a negligence claim based on breach of several duties owed them by the Iowa State Commerce Commission. In moving for summary judgment, the State characterized the action as based on misrepresentation and thus subject to an exception to

the State's waiver of sovereign immunity. *See* Iowa Code § 25A.14(4) (1981). The trial court overruled the motion, and we granted the State's application for interlocutory review. We now affirm the trial court.

Plaintiffs' claims against the State are contained in two counts of the petition. Each count makes essentially the same allegations except that in one the commerce commission's conduct is called negligent and in the other it is called willful and wanton. Plaintiffs allege that for more than five years before February 1, 1980, the Prairie Grain Company operated a grain elevator at Stockport, that in each of five years before 1980 the commission issued the company a grain dealer's license and a warehouseman's license, that the company was insolvent during those five years, that the insolvency would have been discovered by a proper audit, that the commission knew its staff and procedure were inadequate for it to meet its statutory obligation to administer the Iowa Bonded Warehouse Law and the Iowa Bonded Grain Dealers Law, and that the commission's conduct proximately caused them to lose the value of grain delivered by them to the elevator for sale or storage.

Specifications of negligent and willful and wanton conduct included allegations that the commission:

(a) failed to inspect Prairie Grain and the contents of its warehouse not less than once every six months in violation of the *Code of Iowa,* § 543.2;

(b) when it did inspect Prairie Grain, the Commission performed the inspections in a negligent, careless and substandard manner;

(c) failed to adopt rules necessary for the efficient administration of the Iowa Bonded Warehouse Law in violation of the *Code of Iowa,* § 543.3;

(d) failed to adopt rules necessary for the efficient administration of the Iowa [Grain Dealers] Law in violation of the *Code of Iowa,* § 542.2;

(e) with knowledge that its staff and procedures were inadequate to carry out its statutory function, the Commission failed to request additional and/or more competent field examiners and other personnel.

 Code chapter 25A, the Iowa Tort Claims Act, abrogates sovereign immunity for tort claims against the State with certain exceptions. Among the exceptions is any claim "arising out of . . . misrepresentation. . . ." § 25A.14(4). Because our statute is based on the federal Tort Claims Act, we assume our legislature intended it to have the same meaning as the federal statute. *Hubbard,* 163 N.W.2d at 911. Federal decisions interpreting the federal act are therefore entitled to great weight. *Id.* at 909.

The misrepresentation exception is addressed in two Supreme Court decisions, *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), and *Block v. Neal,* —— U.S. ——, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983).

In *Neustadt* the exception was held applicable to a claim against the government by a purchaser of residential property who alleged he paid a price in excess of the property's fair market value because he relied on a negligently done inaccurate FHA inspection and appraisal. The Court found that the purchaser's claim that the government had breached its duty to use due care in obtaining information on which the purchaser might reasonably be expected to rely was wholly based on common law negligent misrepresentation. *Id.* 366 U.S. at 706–07, 81 S.Ct. at 1300–01, 6 L.Ed.2d at 621–22.

The Court held that the misrepresentation exception includes negligent misrepresentation. 366 U.S. at 702, 81 S.Ct. at 1298, 6 L.Ed.2d at 619. The Court also held that misrepresentation has its common law meaning. *Id.* at 706–07, 81 S.Ct. at 1300–01, 6 L.Ed.2d at 621–22.

The respondent in *Block v. Neal* borrowed money from the Farmers Home Administration (FmHA) for the construction of a house. She made a contract with a builder that included provisions requiring the home to conform with plans approved

by FmHA and giving FmHA the right to inspect and test all materials and workmanship and reject any that were defective. FmHA conducted inspections and ultimately issued a final report certifying conformity of the construction with the plans. After moving into the home, respondent discovered deviations from the plans and defects in materials and workmanship which neither the builder nor FmHA would remedy. She then brought suit against the government under the federal Tort Claims Act based on alleged negligence by FmHA in carrying out its inspections. Relying on *Neustadt,* the government asserted that the action was barred by the misrepresentation exception in the federal statute.

In rejecting the government's contention, the Court noted that "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." —— U.S. at ——, 103 S.Ct. at 1093, 75 L.Ed.2d at 74. The Court distinguished *Neustadt* on the ground that the purchaser in that case did not allege any injury "that he would have suffered independently of his reliance on the erroneous appraisal." *Id.* at ——, 103 S.Ct. at 1093, 75 L.Ed.2d 74.

The Court then said:

Section 2680(h) thus relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements. As a result, the statutory exception undoubtedly preserves sovereign immunity with respect to a broad range of government actions. But it does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty.

. . . . .

FmHA's duty to use due care to ensure that the builder adhere to previously approved plans and cure all defects before completing construction is distinct from any duty to use due care in communicating information to respondent. And it certainly does not "appea[r] beyond

doubt" that the only damages alleged in the complaint to be caused by FmHA's conduct were those attributable to Neal's reliance on FmHA inspection reports.

. . . . .

Common to both the misrepresentation and negligence claim would be certain factual and legal questions, such as whether FmHA officials used due care in inspecting Neal's home while it was under construction. But the partial overlap between these two tort actions does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well. Neither the language nor history of the Act suggest that when one aspect of the Government's conduct is not actionable under the "misrepresentation" exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the Government's conduct. "The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced." [citation omitted]. Any other interpretation would encourage the Government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits.

*Id.* at ——, 103 S.Ct. at 1093–94, 75 L.Ed.2d at 74–75.

The *Neal* decision has been applied by the Court of Appeals for the Third Circuit in *Cross Brothers Meat Packers, Inc. v. United States,* 705 F.2d 682 (3rd Cir.1983), and *J.M. Mechanical Corp. v. United States,* 716 F.2d 190 (3rd Cir.1983). In *Cross Brothers,* a meatpacking company brought a tort claim against the government based on alleged negligence of government meat graders in grading and supervising grading of its meat, causing the meat to be undervalued. In holding that *Neal* foreclosed the government's reliance on the misrepresentation exception, the court said: "The meat was irrevocably devalued when the grade was placed upon it; its value was not affected by Cross' reliance on government state-

ments." 705 F.2d at 684. In *J.M. Mechanical Corporation,* a subcontractor brought a tort claim against the government based on alleged negligence of the Housing and Urban Development (HUD) agency in failing to secure a valid performance and payment bond on a project for which HUD guaranteed a mortgage. The court characterized the action as "based on the failure of the government to secure new bonds, not on the government's failure to tell J.M. of the failure of the original bonds." 716 F.2d at 195. Specifically the court found two allegations were not misrepresentation claims. Those allegations were that "HUD was negligent in its investigation and verification of the payment and performance bonds" and that HUD "was negligent in failing to secure another surety bond or other assurance of payment." *Id.* at 195 n. 1. As a result, the court held the action was not barred by the misrepresentation exception.

■ In the present case, the State places particular reliance on *Neustadt* and *Preston v. United States,* 596 F.2d 232 (7th Cir.), *cert. denied,* 444 U.S. 915, 100 S.Ct. 228, 62 L.Ed.2d 169 (1979). We believe, however, that this case comes within the holding of *Neal* and the recent third circuit cases instead. As in *Neal,* it does not appear beyond doubt that the only damages alleged in the petition are those attributable to the government's failure to use due care in communicating information. Plaintiffs accuse the State of breaching a broad range of licensing, bonding and regulatory duties. The gist of their claim is that if those duties had been performed the elevator would not have been permitted to engage in the practices that led to the bankruptcy and loss of their grain.

*Preston* is similar to the present case in that it involved tort claims against the government by farmers who lost their grain when a grain storage facility went bankrupt. It is different, however, in that the agency involved was the Commodity Credit Corporation (CCC) which had less pervasive duties than the State in this case. The court characterized the complaint as alleging that CCC approval and subsequent auditing of the warehouse by government agencies created an aura that the warehouse was safe, and that the farmers relied to their detriment on this apparent approval. 596 F.2d at 238. The present allegations cannot be so narrowly characterized. Furthermore, *Preston* was decided before *Neal.* In *Neal,* the Court distinguishes between misrepresentation in its "generic sense" and in its meaning as a common law tort. *See* —— U.S. at —— n. 7, 103 S.Ct. at 1094, 75 L.Ed.2d at 75. Reliance by the farmers in this case on agency performance of its statutory duties as a predicate for their cause of action constitutes reliance only in the generic sense. They allege they sustained damages as a proximate result of the agency's breach of those duties. They do not base their action on the communication of misinformation.

Plaintiffs maintain they have alleged breach of statutory duties by the commission similar to those that were sufficient to state negligence claims against a municipality in *Wilson v. Nepstad,* 282 N.W.2d 664 (Iowa 1979). The State separately alleged that no such basis of liability exists under the statutes involved here, citing Iowa Code sections 542.14 and 543.38 (1981). This issue was raised in a motion to dismiss that was overruled and from which appeal was not sought. The only issue raised in the motion for summary judgment is the applicability of the misrepresentation exception, and the parties agree that the issue of viability of plaintiffs' claims on a theory other than misrepresentation is not before us in this appeal. The only question we now decide is whether the misrepresentation exception bars the action. *See Lewis v. State,* 256 N.W.2d 181, 192–93 (Iowa 1977). We are persuaded it does not. We therefore hold that the trial court did not err in overruling the State's motion for summary judgment.

AFFIRMED.