HIGGINBOTHAM, Circuit Judge:
Current and former federal law enforcement employees < and their spouses deceived into investing in a Ponzi scheme presenting as the Federal Employee Benefits Group, Inc. (“FEBG”) Bond Fund seek relief under' the Federal Tort Claims Act (“FTCA”), 28 U.S.C. § 1346(b)(1), asserting claims of negligent conduct and aiding and abetting the scheme. The Government moved to dismiss for lack of subject matter jurisdiction, relying upon the misrepresentation and discretionary function exceptions to the FTCA. The district court agreed that the misrepresentation exception applied and dismissed. We now AFFIRM.
I.
Around 1988, Kenneth Wayne McLeod began contracting with various federal agencies to provide retirement advice to federal employees. McLeod founded and ran the FEBG Bond Fund. Most of the Plaintiffs met McLeod at retirement seminars hosted by their agency employer, where McLeod spoke generally about finances and retirement and also pitched his fund. McLeod would sometimes follow up with individual employees, promising high, secure returns in the FEBG Bond Fund. Several Plaintiffs “invested” their life savings.
Around 2008, McLeod’s company began experiencing financial trouble. In 2010, a duped investor complained to the United States Securities and Exchange Commission, and on June 17, 2010, McLeod admitted the fund was a Ponzi scheme. Shortly thereafter, he committed suicide.
Plaintiffs sued the United States under the FTCA. They filed their original complaint on February 19, 2013, alleging five counts against various federal agencies. The United States moved to dismiss for lack of subject matter jurisdiction and improper venue, alternatively for a stay. After a hearing, the district court denied the Government’s motion without prejudice and allowed discovery to proceed, finding that it needed a more developed record to ■resolve the challenge to jurisdiction. Additional motions,[1] another hearing, discovery, an unsuccessful settlement effort, and an amended complaint followed. Notably, Plaintiffs’ amended complaint alleged that McLeod was a government employee, not a contractor, a contention they stood by in defending the court’s jurisdiction.
Plaintiffs’ amended complaint contained six counts. Count I alleged McLeod was negligent per se for selling unregistered securities which violated the Florida Securities and Investor Protection Act. Count II alleged that government employees aided and abetted McLeod in his sale of unregistered securities. Count III alleged common law negligence, including breach of an employer/employee duty of care, based on a number of theories. Plaintiffs additionally alleged that government employees negligently failed to supervise McLeod. Count IV alleged breach of fiduciary duty by, for example, allowing prohibited commercial solicitation. Count V alleged negligent supervision, and count VI alleged negligent infliction of emotional distress. The Government again moved to *1301 dismiss for lack of subject matter jurisdic- ■ tion.
On September 12, 2016, the district court found Plaintiffs’ claims barred by sovereign immunity, focusing its ruling upon the misrepresentation exception to the FTCA. Important to the arguments on appeal, the district court accepted Plaintiffs’ new allegation that McLeod acted as a United States employee for FTCA purposes. As the court recounted:
[Pjlaintiffs have at times altered their primary theories of liability to try to state a viable FTCA claim. Also, the Court granted plaintiffs an opportunity to conduct extensive jurisdictional discovery to try to support their claims. The current and final iteration of their case is premised on the contention that McLeod was an ‘employee’ of the United States when he committed his •wrongs. All causes of action in the amended complaint assume that McLeod was an employee. While this is different from plaintiffs’ earlier contention that McLeod was not an employee [citations omitted], the Court assumes for purposes of testing plaintiffs’ claims that McLeod was an employee of the United States.
Upon analyzing Plaintiffs’ “best case,”[2] the district court found that two “paradigm plaintiffs [could not] demonstrate that subject matter jurisdiction [was] proper.” The district court found that Plaintiffs’ injuries from counts I and II — negligence per se for McLeod’s selling unregistered securities, and governmental aiding and abetting — “flow[ed] from the securities and McLeod’s representations which underlay them being fraudulent, not because they were unregistered.” The court therefore found that McLeod’s failure to register was not an independent cause of Plaintiffs’ harm. As for the other counts, the district court found that the “crucial component of plaintiffs’ claims ... is that McLeod ... lied about the bona fides of the FEBG Bond Fund, and other government employees, either expressly or impliedly, convinced plaintiffs to trust McLeod and invest with him.” The court concluded that Plaintiffs’ injuries were “dependent” on the misrepresentations and omissions of McLeod and other governmental employees, and were consequently barred.
Plaintiffs appeal.
II.
“We review a district court’s dismissal of an action for lack of subject matter jurisdiction de novo.”[3] Unless it consents, the United States retains sovereign immunity from suit.[4] Relevant here, the United States has waived its immunity for claims under the FTCA.[5] “[W]hile the FTCA, as a general matter, waives what would otherwise be the federal government’s sovereign immunity from legal actions for torts committed by its employees, there are exceptions to that general waiver.” [6] “[A] court must strictly observe the *1302 ‘limitations and conditions upon which the Government consents to be sued’ and cannot imply exceptions not present within the terms of the waiver.”[7] One such exception is the intentional tort exception, which bars:
[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights ...[8]
“[A] claim will be deemed to have arisen from a § 2680 excepted tort if the governmental conduct that is essential to the plaintiff’s cause of action is encompassed by that tort. And this is so even if the plaintiff has denominated, as the basis for the cause of action, a tort not found within § 2680(h)’s list of excepted torts.”[9]
One of the excepted torts is misrepresentation. “The Supreme Court has characterized ‘misrepresentation’ as being a breach of the ‘duty to use due care in obtaining and communicating information upon which [another] may reasonably be expected to rely in the conduct of his economic affairs.’ ”[10] “Accordingly, ‘the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies.’ ”[11] “The misrepresentation exception encompasses failure to communicate as well as miscommunication.”[12] “The test in applying the misrepresentation exception is whether the essence of the claim involves the government’s failure to use due care in obtaining and communicating information.”[13] In determining whether the exception applies, “it is ‘the substance of the claim and not the language used in stating it which controls.’ ”[14]
A.
We first turn to the district court’s dismissal of Plaintiffs’ count- I claim against McLeod. Assuming McLeod is a government employee — as Plaintiffs did in their amended complaint — Plaintiffs’ claim of negligence per se for unregistered securities arises out of misrepresentation. As the district court correctly explained, “had the FEBG Bond Fund been legitimate, the fact of its being unregistered would have had no effect on plaintiffs. And conversely, if McLeod had registered the fraudulent securities (lying about them to do so since they didn’t exist), plaintiffs would still have suffered the same harm. Plaintiffs’ injuries flow from the securities and McLeod’s representations which underlay them being fraudulent, not because they were unregistered.” Said differently, even though Plain *1303 tiffs have “denominated, as the basis for the cause of action, a tort not found within § 2680(h)’s list of excepted torts” McLeod’s misrepresentations are nevertheless “the governmental conduct that is essential to the plaintiffs’] cause of action.” [15]
And even if McLeod is not considered a government employee — which Plaintiffs at times hint at throughout their briefing — then Plaintiffs cannot recover against him under the FTCA, which allows recovery for only injuries “caused by the negligent or wrongful act or omission of any employee of the Government^]”[16] Accordingly, Plaintiffs’ count I claim is either barred by the misrepresentation exception or is not actionable under the FTCA.
B.
Plaintiffs’ other claims are similarly barred by the FTCA’s intentional tort exception because they “aris[e] out of ... misrepresentation,”[17] and, contrary to Plaintiffs’ contention, Sheridan v. United States[18] does not save them.
1.
In Zelaya v. United States, plaintiffs were victims of Allen Stanford’s Ponzi scheme.[19] They sued under the FTCA alleging the SEC was negligent for failing to notify an investor protection group about the scheme.[20] This Court “examine[d] Plaintiffs’ notification claim to determine if [it] [wa]s based on the communication or miscommunication of information upon which others might be expected to rely in economic matters.”[21] If it was, the Court explained, “and if a flawed communication caused the Plaintiffs’ injury, then Plaintiffs’ claim [would] be construed as a misrepresentation claim[.]”[22] Emphasizing that the misrepresentation exception includes both miscommunications and non-communications,[23] the Court found that plaintiffs’ claim was grounded in the SEC’s non-communication of financial information.[24] Consequently, the misrepresentation exception applied.[25]
In reaching this outcome, the Zelaya Court sifted through the applicable case law, separating cases in which the misrepresentation exception applied from those in which it did not, developing guidance for future cases in the process. For instance, failure-to-warn cases which do not involve injuries arising from “commercial decisions based on the governments’ misrepresentations” are not barred by the misrepresentation exception.[26] Nor are cases in which the Government’s breach of an independent “operational” duty causes the injury.[27] The Court explained, “if a plaintiff can show that the Government has breached a *1304 duty distinct from the duty not to make a misrepresentation and if that breach [] caused the plaintiffs injury, the fact that the Government may have also made a misrepresentation will be insufficient to trigger the misrepresentation exception[.]”[28]
Plaintiffs argue that the district court read Zelaya too broadly in finding it applied to bar their claims. They also attempt to distinguish Zelaya by claiming that in that case, “[tjhere was no allegation ... that the persons who failed to notify the [Securities Investor Protection Corporation (“SIPC”) ] were not SEC employees or were SEC employees acting outside the scope of their employment.”
The Government responds by defending Zelaya as consistent with Supreme Court doctrine. It argues that in this case, like in Zelaya and others, “misrepresentation is the essence of plaintiffs’ claims[.]” The Government suggests that the alleged omissions during McLeod’s seminars, which gave Plaintiffs “undue confidence in McLeod’s credibility,” constitute misrepresentations.
The Zelaya Court made clear that “a claim will be deemed to have arisen from a § 2680 excepted tort if the governmental conduct that is essential to the plaintiffs cause of action is encompassed by that tort.”[29] Plaintiffs alleged McLeod was a government employee in their amended complaint. From this premise, it is evident that the governmental conduct essential to Plaintiffs’ causes of action was McLeod’s false statements about his bond fund — in other words, McLeod’s misrepresentations.
In this case, it is of no consequence that Plaintiffs characterize the alleged breached duties as other than misrepresentation because “a plaintiff cannot circumvent the misrepresentation exception simply through the artful pleading of its claims.”[30] Similarly, it does not matter that Plaintiffs alleged governmental employees other than McLeod breached such duties. On that point, Zelaya was clear: “if the governmental conduct that is essential to proving a plaintiffs claim would be covered by the misrepresentation exception, then the Government is shielded from liability by sovereign immunity, no matter how the plaintiff may have framed his claim or articulated his theory.”[31]
'In JBP Acquisitions, plaintiffs tried to escape the misrepresentation exception by arguing “that the Government was negligent in selling it [a] loan securing ... Property and then continuing to act as though it had an ownership interest in the Property by negotiating a condemnation award with [the Metropolitan Atlanta Olympic Games Authority].”[32] The court rejected the plaintiffs’ argument, finding that it was actually the Government’s failure to communicate certain information to the plaintiffs and misrepresentations regarding its ownership that constituted the basis of the negligence claims.[33] Similarly, the basis of Plaintiffs’ claims in the present case are McLeod’s misrepresentations about his phony bond fund.
McLeod aside, the alleged negligent conduct of the various agency employees yet falls within the misrepresentation exception. This Court has explained that “[t]he [misrepresentation] exception *1305 covers actions for negligence when the basis for the negligence action is an underlying claim for misrepresentation.”[34] The alleged negligent conduct of the agency employees stems from both their failure to stop McLeod’s solicitation (non-communications) and their endorsement of McLeod (miscommunications). Each of the allegations in Plaintiffs’ remaining five counts falls into one' or the other.[35]
In count II, Plaintiffs alleged that various agency employees aided and abetted McLeod in violating the Florida Securities and Investor Protection Act. But, as explained, the underlying violation is barred by the misrepresentation exception, and in any event the alleged aiding and abetting is comprised of governmental miscommu-nications that McLeod and his services were legitimate.[36] In count III, Plaintiffs allege common law negligence in that various agency employees breached employer-based duties and the duty to act carefully by negligently failing to follow a bevy of policies, provisions, and regulations.[37] They additionally make claims of negligent failure to vet, investigate, and supervise McLeod. Yet, the basis for each of the alleged breached duties is in fact the Government’s failure to communicate information about McLeod, as well as their mis-communications in endorsing McLeod. Moreover, several of the claims necessarily depend on finding that the Government breached its duty to use due care in “communicating information upon which [Plaintiffs] may reasonably be expected to rely in the conduct of [their] economic affairs.” [38]
The essence of misrepresentation “whether negligent or intentional, is the communication of misinformation on which the recipient relies.’ ”[39] The Ninth Circuit has described that “[t]he key distinction in this area is between the performance of operational tasks and the communication of information.”[40] Although some claims will implicate both,[41] the “essence of the complaint” here is the Government’s mis-communieating McLeod’s legitimacy.[42] Said differently, the Government’s communication of misinformation here was far more than “collateral.”[43]
*1306 In count IV, Plaintiffs alleged breach of fiduciary duty by improperly soliciting, promoting, failing to follow ethics laws, and failing to properly vet McLeod and the FEBG. Soliciting and promoting are plainly acts of communication that fall within the misrepresentation exception. And although violating ethics rules and failing to vet offer- an accurate description of the Government’s conduct, it is not complete.[44] The Supreme Court instructed that we look to the “essence” of the claim to reach its footing.[45] Here, the essence “is the communication of misinformation on which [Plaintiffs] relie[d].”[46] The same is true for Plaintiffs’ count V allegations of negligent supervision. Alleging the breached duty to be a failure to “supervise, direct and control,” Plaintiffs strive but fail to circumvent the misrepresentation bar.[47] Finally, in count VI, Plaintiffs alleged negligent infliction of emotional distress (“NIED”), which “requires an adequately pled underlying claim of negligence.”[48] Because any underlying negligence claims are covered by the misrepresentation exception, Plaintiffs’ NIED claim is also barred. In short, like in Zelaya, “because Plaintiffs’ claimfs] [are] focused on non-communication [and miscommunication] of financial information” by the various agency employees, “the misrepresentation exception springs into action to prevent a waiver of the Government’s sovereign immunity.” [49]
Then there is the requirement of causation. To escape the misrepresentation exception in cases like this, Zelaya requires Plaintiffs not only to “show that the Government has breached a duty distinct from the duty not to make a misrepresentation” but also, critically, that “that breach ... caused the plaintiffs injury.”[50] In coming to that conclusion, the Zelaya decision relied on the Supreme Court’s Block v. Neal decision, which said that the misrepresentation exception “relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government’s negligent misstatements.... But it does not bar negligence actions which focus not on the Government’s failure to use due care in communicating information, but rather on the Government’s breach of a different duty.”[51]
Plaintiffs cannot make the required showings in this case. Their injuries are “wholly attributable to reliance on” misrepresentations.[52] In Zelaya, “[t]he injury Plaintiffs suffered ... was the loss of their investment money, which is an economic injury arising from a commercial decision that Plaintiffs may not have made had the SEC notified - SIPC of Stanford Group’s financial frailty.”[53] The injury Plaintiffs *1307 suffered in this case was also the loss of their investment money, “which is an economic injury arising from a commercial decision that Plaintiffs may not have made had” McLeod not peddled his fraudulent fond, and had agency employees not communicated McLeod’s legitimacy. Plaintiffs emphasize that an injury can have more than one cause.[54] While correct as far as it goes, we must also determine whether the misrepresentation was central to the claim and injury.[55] In JBP Acquisitions, for instance, the Court determined that misrepresentations about the ownership of the loan are what made the Government’s conduct negligent in the first place, and that without the misrepresentation, there would have been no injury.[56] The misrepresentation in JM Mechanical Corporation, on the other hand, was “[a] subsequent and collateral misrepresentation that merely aggravated the injury” which did “not suffice to invoke the misrepresentation exception.” [57] Here, McLeod and the agency employees’ misrepresentations are what made the Government’s conduct negligent and such misrepresentations were the primary cause of injury.[58]
2.
Plaintiffs’ primary argument on appeal is that Sheridan v. United States offers their claims passage through the intentional tort gate.[59] In Sheridan, an intoxicated off-duty servieemember injured plaintiffs by shooting a rifle into their car.[60] Before doing so, three naval corpsmen had encountered the drunk serviceman inside a hospital.[61] “They attempted to take hipi to the emergency room, but he broke away ... revealing the barrel of [a] rifle. At the sight of the rifle barrel, the corpsmen fled. They neither took further action to subdue [him], nor alerted the appropriate authorities[.]”[62] The plaintiffs sued the United States, “alleging that their injuries were caused by the Government’s negligence in allowing [the serviceman] to leave the hospital with a loaded rifle in his *1308 possession.”[63] The Supreme Court considered “whether petitioners’ claim [was] one ‘arising out of an assault or battery within the meaning of 28 U.S.C. § 2680(h).”[64]
In a two-part analysis, the Court held that the claim was not barred by the intentional tort exception. In the first part of its analysis, the Court considered a “claim arising out of two tortious acts, one of which is an [intentional tort] and the other of which is a mere act of negligence.”[65] The Court acknowledged that “in at least some situations the fact that an injury was directly caused by an [intentional tort] will not preclude liability against the Government for negligently allowing the [intentional tort] to occur.”[66]
The Court recognized two theories. The first is that a claim does not arise “solely” or “predominantly” out of the intentional tort when there is an allegation of independent, antecedent negligence against the Government.[67] “Under this view, the assailant’s individual involvement would not give rise to Government liability, but antecedent negligence by Government agents eould[.]”[68] But the Supreme Court expressly declined to rely on this theory.[69]
The second theory — and the one relied on by the Court — is that “the intentional tort exception is simply inapplicable to torts that fall outside the scope of § 1346(b)’s general waiver.”[70] The Court cited favorably to Justice (then Judge) Harlan’s reasoning in Panella v. United States,[71] which concluded that the intentional tort exception “must be read against the rest of the Act.”[72] Accordingly, “[t]he exception should ... be construed to apply only to claims that would otherwise be authorized by the basic waiver of sovereign immunity.”[73] Since the FTCA’s basic waiver only authorizes claims for injuries caused by government employees acting in the scope of their employment,[74] an intentional tort by a ñon-government employee, or a government employee acting outside the scope of employment, could not furnish the basis of an FTCA claim.[75] Applied to Sheridan, if the claim only involved the off-duty intoxicated servieemember — i.e., a government employee acting outside the scope of employment — plaintiffs would have had no basis for suing the Government under the FTCA.[76] Without a viable *1309 FTCA claim, the FTCA’s intentional tort exception would be inapplicable.[77]
Turning to the first of these two theories, McLeod, who committed the intentional tort of misrepresentation, is akin to the servicemember, who committed the intentional tort of assault. Under the first theory, “[McLeod’s] individual involvement would not give rise to Government liability, but antecedent negligence by Government agents could[.]”[78] However, this Circuit has not adopted this theory, and we have been given no good reason to do so today. Plaintiffs’ negligence claims against agency defendants therefore cannot proceed under the first theory.
Nor can they under the second. The Sheridan Court explained that “[b]y voluntarily adopting [firearm] regulations ... and by further voluntarily undertaking to provide care to a person who was visibly drunk and visibly armed, the Government assumed responsibility to ‘perform [its] “good Samaritan” task in a careful manner.’ ”[79] The status of the intoxicated ser-vicemember tortfeasor was irrelevant to this duty. The Court pointed out that the plaintiffs’ allegations included those against “other Government employees who allowed a foreseeable assault and battery to occur,” which “may furnish a basis for Government liability that is entirely independent of [the servicemember’s] employment status.”[80] The Court concluded, “in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that [the servicemember] was on a federal payroll.”[81] The plaintiffs thus avoided the intentional tort bar because the Government’s alleged negligence had nothing to do with the intoxicated servicemember’s employment status. In this case, however, the Government’s alleged negligence was closely connected to McLeod’s employment status. Indeed, McLeod’s presentments under the auspices of the Government were fundamental.
Plaintiffs urge that the agency employees who vouched for McLeod and failed to stop his solicitations are akin to the Navy corpsman in Sheridan who failed to stop the servicemember’s assault. Just as the Navy corpsman undertook an independent duty of care to protect people from a possible assault, Plaintiffs suggest the agency employees here had an independent duty to protect employees from impermissible solicitations and commercial activity. The Government contends that “McLeod’s relationship with the government is at the heart of this case.” It asserts that “Plaintiffs’ theory of liability turns on the fact that the government contracted with McLeod’s employer and that his appearance at government-arranged seminars *1310 gave plaintiffs undue confidence in McLeod’s credibility.”
As an initial matter, Plaintiffs’ negligent supervision claims are “rooted in supervisor-supervisee relationships at work,”[82] and thus closely related to McLeod’s employment status. All of Plaintiffs’ other claims — no matter how framed — are similarly connected to McLeod’s employment status as a governmental employee hired to help discharge the Government’s duty to provide retirement assistance to its employees. Plaintiffs’ insistence that the Government had antecedent, independent duties unrelated to McLeod’s employment relationship is incorrect.
Ultimately, since Plaintiffs’ claims arise out of McLeod’s misrepresentations about his bond fund, 28 U.S.C. § 2680(h) bars Plaintiffs’ claims. Sheridan does not alter the outcome because, unlike in that case, the Government’s liability was not independent of McLeod’s employment status.
III.
Congress has delineated the Government’s liability via the FTCA and its attendant exceptions. Concluding that the misrepresentation exception applies to bar Plaintiffs’ claims, we AFFIRM.

. On May 15, 2015, the Government moved to dismiss, which the district court granted. The district court allowed Plaintiffs to file an amended complaint.

. The court thus "put[ ] aside those investors who were not employed by the government, those who did not invest in the FEBG Bond Fund but hired McLeod to manage their investment portfolio, those who did not meet McLeod at a government-sponsored seminar or who did not attend a seminar at a GSA-controlled venue.” It also presumed a plaintiff who lived in Florida for venue purposes, and identified two plaintiffs who fit this criteria.

. Zelaya v. United States, 781 F.3d 1315, 1321 (11th Cir. 2015), cert. denied, - U.S. -, 136 S.Ct. 168, 193 L.Ed.2d 124 (2015) (citation omitted).

. Id.

. Douglas v. United States, 814 F.3d 1268, 1280 (11th Cir. 2016) (Tjoflat, J., concurring).

. Zelaya, 781 F.3d at 1321.

. Id. at 1322 (quoting Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)).

. 28 U.S.C. § 2680(h) (emphasis added).

. Zelaya, 781 F.3d at 1333 (citations omitted).

. Id. at 1334 (quoting United States v. Neustadt, 366 U.S. 696, 706, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961)).

. Id. (quoting Block v. Neal, 460 U.S. 289, 296, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983)); accord Block, 460 U.S. at 296 n.5, 103 S.Ct. 1089 ("The ‘misrepresentation’ exception applies only when the action itself falls within the commonly understood definition of a misrepresentation claim, which has been identified with- the common law action of deceit, and has been confined very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.” (some internal quotation marks omitted)).

. JBB Acquisitions, LP v. U.S. ex rel. F.D.I.C., 224 F.3d 1260, 1265 n.3 (11th Cir. 2000).

. Id. at 1264 (citations omitted).

. Zelaya, 781 F.3d at 1334 (citation omitted).

. Zelaya, 781 F.3d at 1333 (citations omitted).

. 28 U.S.C. § 1346(b)(1) (emphasis added).

. 28 U.S.C. § 2680(h).

. 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988).

. Zelaya, 781 F.3d at 1318.

. Id. at 1318-20. Plaintiffs’ claim derived from the alleged violation of a statutory duty in the Securities Investor Protection Act. See id. at 1333.

. Id. at 1334.

. Id.

. See id.

. Id. at 1335.

. See id.

. Id. at 1338.

. ' Id. at 1336.

. Id.

. Zelaya, 781 F.3d at 1333.

. JBP Acquisitions, 224 F.3d at 1264 (citations omitted).

. Zelaya, 781 F.3d at 1334.

. JBP Acquisitions, 224 F.3d at 1265.

. See id.

. Id. at 1264 (citations omitted).

. Plaintiffs must also demonstrate a state-law analogue for each of their claims. Zelaya, 781 F.3d at 1324 (‘‘[T]he fact that a federal employee has failed to perform duties imposed by federal law is insufficient by itself to render the federal government liable under the FTCA. Instead, a state tort cause of action is a sine qua non of FTCA jurisdiction, and we have dismissed FTCA suits that have pleaded breaches of federal duties without identifying a valid state tort cause of action.” (citations omitted)). However, like the district court, we need not decide this issue since we can affirm the dismissal for other reasons.

. For example, according to Plaintiffs, agency employees aided and abetted by scheduling private meetings with McLeod. Underlying this conduct is a claim of misrepresentation against the Government for endorsing McLeod and his services.

. For instance, an Office of Personnel Management (“OPM”) policy prohibits commercial solicitation, as does a General Services Administration (“GSA”) regulation.

. United States v. Neustadt, 366 U.S. 696, 706, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

. Zelaya, 781 F.3d at 1334 (quoting Block, 460 U.S. at 296, 103 S.Ct. 1089).

. Guild v. United States, 685 F.2d 324, 325 (9th Cir. 1982).

. See, e.g., Block, 460 U.S. at 297-98, 103 S.Ct. 1089.

. Guild, 685 F.2d at 326.

. Id.

. Guild, 685 F.2d at 326 (key issue was "the correct characterization of the Government's conduct").

. See Block, 460 U.S. at 296-97, 103 S.Ct. 1089.

. Mat296.

. See Metz v. United States, 788 F.2d 1528, 1534 (11th Cir. 1986) ("[A] cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of’ an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim.” (citation omitted)).

. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam).

. Zelaya, 781 F.3d at 1335.

. Id. at 1336.

. Block, 460 U.S. at 297, 103 S.Ct. 1089; see Zelaya, 781 F.3d at 1335-36.

. Block, 460 U.S. at 297, 103 S.Ct. 1089.

. Zelaya, 781 F.3d at 1338.

. For support, Plaintiffs cite to Justice Kennedy’s non-binding concurrence in the judgment in Sheridan.

. See JBP Acquisitions, 224 F.3d at 1265.

. See id.

. Zelaya, 781 F.3d at 1336 (summarizing JM Mechanical Corp. v. United States, 716 F.2d 190, 191-95 (3d Cir. 1983)).

. Plaintiffs point out that there are three Plaintiffs who “did not invest in the FEBG Bond Fund, but did hire McLeod to manage their retirement savings after attending an agency-sponsored retirement seminar. These three plaintiffs allege McLeod negligently managed their money.” According to Plaintiffs, these three Plaintiffs did not rely on McLeod's misrepresentations about the Bond Fund. Nonetheless, they relied on McLeod’s misrepresentations about his, and his business’s, legitimacy. For example, as Plaintiffs explain in their amended complaint, ”[a]l-though McLeod held himself out as an expert on the federal retirement system, he was, in reality, not capable of handling his own finances and retirement planning ... McLeod claimed he held a masters degree in finance ... when in reality, McLeod never graduated from college.” The misrepresentation exception applies.

. The Government contends that Plaintiffs waived their Sheridan-based argument. Although this contention has some force, see Gennusa v. Canova, 748 F.3d 1103, 1116 (11th Cir. 2014); In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig., 905 F.2d 1457, 1462 (11th Cir. 1990), we decline to reach it, because even if the argument is preserved, it fails.

. Sheridan, 487 U.S. at 393-94, 108 S.Ct. 2449.

. See id. at 395, 108 S.Ct. 2449.

. Id.

. Id. at 394, 108 S.Ct. 2449.

. Id. (footnote omitted).

. Id. at 398, 108 S.Ct. 2449; accord id. at 404, 108 S.Ct. 2449 (Kennedy, J., concurring in the judgment) ("The question before us is how to interpret the intentional tort exception in the Federal Tort Claims Act ... when a plaintiff's injury is caused both by an intentional tort and by negligence that precedes it.”).

. Id. at 398, 108 S.Ct. 2449 (majority opinion) (emphasis added).

. Id. at 399, 108 S.Ct. 2449.

. Id.

. Id. at 400, 108 S.Ct. 2449.

. Id.

. 216 F.2d 622 (2d Cir. 1954).

. Sheridan, 487 U.S. at 400, 108 S.Ct. 2449.

. Id.

. 28 U.S.C. § 1346(b)(1) (allowing claims for money damages against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment ... ”).

. See Sheridan, 487 U.S. at 400, 108 S.Ct. 2449.

. See id. at 401, 108 S.Ct. 2449 ("If nothing more was involved here than the conduct of Carr at the time he shot at petitioners, there would be no basis for imposing liability on the Government. The tortious conduct of an off- *1309 duty serviceman, not acting within the scope of his office or employment, does not in itself give rise to Government liability whether that conduct is intentional or merely negligent.”).

. Cf. Id. at 400, 108 S.Ct. 2449 ("Since an assault by a person who was not employed by the Government could not provide the basis for a claim under the FTCA, the exception could not apply to such an assault; rather, the exception only applies in cases arising out of assaults by federal employees.”).

. Id. at 399, 108 S.Ct. 2449.

. Sheridan, 487 U.S. at 401, 108 S.Ct. 2449 (footnote and citation omitted). Of note, “[t]he District Court and the Court of Appeals both assumed that petitioners’ version of the facts would support recovery under Maryland law on a negligence theory if the naval hospital had been owned and operated by a private person.” Id.

. Id.

. Id. at 402, 108 S.Ct. 2449 (footnote omitted).

. CNA v. United States 535 F.3d 132, 149 (3d Cir. 2008). According to the Third Circuit, the Sheridan Court recognized "that negligent supervision claims are not covered by the independent negligence theory!.]” Id. at 149 n.10 (citations omitted).