George F. METZ and Ingrid Metz,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 85–8417.

United States Court of Appeals,
Eleventh Circuit.

May 13, 1986.

George M. Rountree, Brunswick, Ga., for plaintiffs-appellants.

Kenneth C. Etheridge, Asst. U.S. Atty., Savannah, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, and ANDERSON, Circuit Judge, and ATKINS *, Senior District Judge.

ANDERSON, Circuit Judge:

George Metz and his wife Ingrid filed this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80. Plaintiffs alleged that certain United States government officials committed a number of intentional torts for which the United States should be liable. The district court entered judgment for the government. Plaintiffs filed timely notice of appeal. We affirm.

## I. FACTS

George Metz was a driving instructor at the Federal Law Enforcement Training Center ("FLETC") until his removal in November of 1982. FLETC is operated by the United States Department of the Treasury

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

("USDT") as a training service to various law enforcement agencies of the federal government. According to plaintiffs' complaint, between 1977 and 1979 George Metz was deliberately passed over for promotions in favor of less qualified and less deserving candidates. This treatment prompted Metz to vocalize to his fellow employees charges of misconduct against FLETC administrators. Metz asserts that his complaints precipitated a conspiracy among FLETC supervisors against him.

Metz claims that, pursuant to this alleged conspiracy, his job performance was evaluated as "excellent" instead of the most favorable evaluation of "outstanding." This performance evaluation, completed by Metz's immediate supervisor, prompted Metz to become even more uncomplimentary of the supervisors in his conversations with other employees.

As a result of these conversations between Metz and his co-workers, Metz was asked to meet with James Lanier, Metz's immediate supervisor, on August 3, 1982. Also present at this meeting were two other FLETC supervisors, David Epstein and Robert McCann. Metz claims this meeting was a "trap" whereby the FLETC officials attempted to elicit statements that would later be used against him. At the meeting, Metz voiced his frustrations and concerns about his treatment by his supervisors. After the meeting, Metz, a reservist in the United States Marines, left to report for active duty at Columbia, South Carolina.

Based on their stated belief that Metz presented a threat to their personal safety, Metz's supervisors took the following actions. David McKinley and George Graves contacted Metz's priest, Father Raymond Carr, and requested that Carr accompany them to the Metz residence. At the time, McKinley was the director of FLETC and Graves was a supervisor. Carr was told that the visit was necessary to locate Metz and to ask his wife what she knew about the personal threats Metz had been making against his supervisors. Carr phoned Mrs. Metz and obtained her permission to bring Graves and McKinley over to visit. At the

Metzes' residence, Mrs. Metz told Graves, McKinley and Carr that Metz was en route to South Carolina to report for military duty.

In the early morning of August 4, 1982, George Metz's supervisors obtained an arrest warrant against Metz on charges of "terroristic threats," a felony offense in Georgia. FLETC officials informed the Marines of the action taken against Metz. This communication to the Marine Corps led to Metz's seizure by Marine personnel and the search of Metz's vehicle, shortly after he arrived at the South Carolina military base. Metz was subsequently transported to a nearby Army mental hospital for psychological evaluation. Metz claims that he was detained there for two days, after which time he was allowed to return to duty at his reservist position.

Despite his mental clearance by Army psychiatrists, on August 6, FLETC supervisors notified Metz that he was being placed on indefinite and involuntary sick leave status pending an examination by a civilian psychiatrist. A notice stating that Metz was being placed on indefinite sick leave status was posted by FLETC officials and viewed by other employees at FLETC.

Upon his return from military duty, Metz underwent another psychiatric evaluation and was again found to be normal in all respects. On October 14, 1982, Metz was notified that he was to return to work but would be assigned to another instructional program. This notification, however, was countermanded by Graves in a letter that informed Metz that FLETC intended to terminate him based on the threatening statements he allegedly made to his co-workers at the August 3 meeting. Metz responded with a letter to Graves that charged certain FLETC administrators with a conspiracy designed to force Metz's resignation from federal employment. Metz was notified of his termination from FLETC by a letter dated November 10, 1982. The decision to terminate was made by McCann.

In addition to appealing his termination through the Merit System Protection Board, plaintiffs filed a *Bivens* suit against

certain FLETC administrators alleging numerous deprivations of their constitutional rights. The district court dismissed that case, stating that the government employer-employee relationship is an area in which courts should hesitate to recognize constitutional causes of action. *Metz v. McKinley*, 583 F.Supp. 683, 688 (S.D.Ga.), *aff'd*, 747 F.2d 709 (11th Cir.1984).

In the instant case, plaintiffs filed a multi-count complaint under the FTCA against the United States government seeking 18 million dollars in damages. The complaint included claims for false arrest, false imprisonment, invasion of both Mr. and Mrs. Metz's privacy, and intentional infliction of emotional distress upon both Mr. and Mrs. Metz. The Metzes raise all of these issues on appeal.

## II. DISCUSSION

### A. *False Arrest and False Imprisonment*

On appeal, the Metzes claim that the government can be held liable under the FTCA for the wrongful acts of USDT and FLETC officials who requested the false arrest and false imprisonment of George Metz, even though his arrest and confinement were effected by Marine Corps personnel. The Metzes claim that while the Marine Corps personnel acted in good faith, they were used as "instruments" or "tools" of the FLETC and USDT officials.[1] Brief of Appellants at 23–24. George Metz's false arrest and false imprisonment claims are brought pursuant to a particular subsection of the FTCA which provides as follows:

The provision of this chapter and section 1346(b) of this title shall not apply to—

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C.A. § 2680(h) (West Supp.1985) (emphasis in original). While claims for false arrest or false imprisonment generally are not viable under the FTCA, "with regard to acts or omissions of *investigative or law enforcement officers of the United States Government,*" such claims may be brought against the government. *Id.* (emphasis added).

■ Metz contends that the Marine personnel that effected his allegedly false arrest and false imprisonment were "investigative or law enforcement officers" for the purposes of § 2680(h). Metz asserts that the FLETC and USDT officials wrongfully instigated his arrest and imprisonment, and that the government is liable for these torts because his former supervisors utilized "investigative or law enforcement officers" to accomplish their goals. Assuming, but expressly not deciding, that Metz was falsely arrested and falsely imprisoned and that the Marine personnel who arrested and confined Metz are "investigative or law enforcement officers" for purposes of

---

**1.** In their appellate briefs and at oral argument, the Metzes assert that their claims against the United States government are not based on any wrongdoing by Marine personnel. Rather, the Metzes claim that the Marines were themselves without culpability but were "instrumentalities" or "tools" of FLETC and USDT. We construe the Metzes' position as an abandonment of any

claim based on the culpability of the Marine Corps or Marine personnel. Therefore, we need not address the applicability of the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny with respect to any potential liability of the United States based on the actions of the Marine personnel.

§ 2680(h), we nevertheless reject Metz's claim. We conclude that the provision permitting governmental liability on the basis of actions of law enforcement officers cannot be expanded to include governmental actors who procure law enforcement actions, but who are themselves not law enforcement officers. The law enforcement proviso is by its terms limited to "acts or omissions of investigative or law enforcement officers." In this regard, we agree with the holding of the Ninth Circuit in *Arnsberg v. United States*, 757 F.2d 971, 977–78 (9th Cir.1984).

Thus, we hold that in this case there is no governmental liability for false arrest or false imprisonment. The Metzes have abandoned any claim of government liability based solely on the actions or culpability of the Marine personnel. *See supra* note 1. Because the FLETC and USDT officials are not themselves law enforcement officers[2] and because the law enforcement proviso cannot be expanded to apply to governmental actors who are not law enforcement officers, the provisions of § 2680(h) bar liability for false arrest and false imprisonment based on the actions of the FLETC and USDT officials.

### B. *The Remaining Claims*

The Metzes' remaining claims on appeal are (1) that FLETC and USDT officials intruded into Mr. Metz's private seclusion by instigating Metz's arrest and the search of his car by Marine personnel, and that these officials intentionally inflicted emotional distress upon Mr. Metz by having him apprehended in Columbia, South Car-

olina and by terminating him from his employment position with FLETC; (2) that FLETC and USDT officials violated Mr. Metz's right of privacy by placing him in a false light in the public eye, and that these officials intentionally inflicted emotional distress upon Mrs. Metz during the August 3, 1982 visit to the Metz home; and (3) that FLETC and USDT officials invaded Mrs. Metz's privacy during that visit. Because we find that each of these causes of action "arose out of" a tort expressly delineated in 28 U.S.C. § 2680(h), we hold that the district court correctly found in favor of the government as to these claims.

The Metzes contend that because the torts of invasion of privacy and intentional infliction of emotional distress are not specifically listed in § 2680(h), such actions against the government are not barred by that subsection. A number of courts have accepted this reasoning. *See Gross v. United States*, 676 F.2d 295, 303–04 (8th Cir.1982) (intentional infliction of emotional distress not a tort specifically exempted by Congress in § 2680(h) and, therefore, action allowed); *Black v. Sheraton Corp. of America*, 564 F.2d 531, 539–40 (D.C.Cir. 1977) (invasion of privacy not a tort specifically exempted by statute).[3]

In the recent case of *United States v. Shearer*, —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), however, four members of the Supreme Court indicated that any claim "arising out of" the intentional torts listed in 28 U.S.C. § 2680(h) may not be pursued against the government under the FTCA.[4] In that case, an off-duty Army

---

2. In rejecting Metz's claims of false arrest and false imprisonment against FLETC and USDT officials, the district court correctly determined that these defendants were not "investigative or law enforcement officers" for purposes of § 2680(h). Record on Appeal at 382–84. Metz does not argue otherwise on appeal.

3. Apparently the "arising out of" argument was not presented to either the *Gross* court or the *Black* court. However, the rationale that we employ in the instant case bears some resemblance to Judge Gibson's dissent in *Gross,* insofar as Judge Gibson focused on the nature of the underlying governmental acts which were being challenged. Compare the rationale of *Black*

with that of *Art Metal—U.S.A., Inc. v. United States,* 753 F.2d 1151 (D.C.Cir.1985), and *JM Mechanical Corp. v. United States,* 716 F.2d 190, 194–95 (3d Cir.1983).

4. In *Shearer,* Chief Justice Burger, and Justices White, Rehnquist, and O'Connor joined the portion of the opinion dealing with § 2680(h). Justices Brennan, Blackmun, Stevens, and Marshall concurred in a portion of the opinion dealing with the *Feres* doctrine, and concurred in the judgment. These members of the court gave no explanation as to why they did not join in Chief Justice Burger's FTCA analysis. Justice Powell took no part in the decision of this case. Although the relevant part of the *Shearer* opinion

private was kidnapped and murdered by another serviceman. The victim's mother sued the government under the FTCA claiming that the Army's negligence caused her son's death. In finding that this claim was barred by the sovereign immunity retained under § 2680(h), Chief Justice Burger stated:

> The Federal Tort Claims Act's waiver of sovereign immunity does not apply to "[a]ny claim arising out of assault [or] battery," 28 U.S.C. § 2680(h), and it is clear that respondent's claim arises out of the battery committed by Private Heard. No semantical recasting of events can alter the fact that the battery was the immediate cause of Private Shearer's death and, consequently, the basis of respondent's claim.

> Respondent cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee. Thus, "the express words of the statute" bar respondent's claim against the Government. *United States v. Spelar*, 338 U.S. 217, 219 [70 S.Ct. 10, 11, 94 L.Ed. 3] (1949).... [I]t appears that Congress believed that § 2680(h) would bar claims arising out of a certain type of factual situation—deliberate attacks by Government employees.

*Shearer*, —— U.S. at ——, 105 S.Ct. at 3042 (emphasis in original).

In a related context, the Supreme Court in *Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), has indicated that the phrase "arising out of"

should be broadly construed. In that case, a plaintiff brought a claim under the FTCA for damage done to his property during the time it was being held by the Customs Service as the subject of forfeiture proceedings. The government argued that this claim was barred by 28 U.S.C. § 2680(c) which exempts from the coverage of the FTCA "[a]ny claim arising in respect of ... the detention of any goods or merchandise by any officer of Customs." The plaintiff asserted that the exemption covered only claims for damage caused by the detention itself, such as a decline in economic value, and not for negligent destruction of property while in the possession of the Customs service. *Kosak*, 104 S.Ct. at 1522–23.

The court of appeals in that case held that § 2680(c) shields the United States from "all claims arising out of detention of goods by Customs officers and does not purport to distinguish among types of harm." 679 F.2d 306, 308 (3d Cir.1982). Analogizing to language contained in other exemptions of the FTCA, the Supreme Court affirmed the Third Circuit stating that " 'any claim arising in respect of' the detention of goods means any claim 'arising out of' the detention of goods, and includes a claim resulting from negligent handling of storage of detained property." 104 S.Ct. at 1524. The Supreme Court rejected the plaintiff's contention that the legislative history of § 2680(c) and the structure of the statute as a whole implied that the exemption of § 2680(c) was a narrow one. Instead, the Court stated that the statutory language "sweep[s] within the exception all injuries associated in any way with the 'detention' of goods." *Id.* at 1523.[5]

In *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), the Supreme

---

was joined by only four Justices, the analysis is consistent with *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983) and *Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), discussed *infra*, both of which commanded a majority.

5. In his dissent in *Kosak*, Justice Stevens reasoned that because Congress used the words "arising in respect of" rather than "arising out of" in § 2680(c), § 2680(c) should be read more narrowly than those exemptions containing the phrase "arising out of." 104 S.Ct. at 1528–32 (Stevens, J., dissenting).

Court supplied perhaps the clearest guidance to lower federal courts called upon to interpret 28 U.S.C. § 2680(h). In that case, the Court addressed the question of whether a plaintiff's claim against the Farmer Home Administration for negligent supervision of the construction of a house "arose out of misrepresentation" within the meaning of § 2680(h). In its analysis, the *Neal* Court examined whether the plaintiff had alleged any injury independent of her reliance on the alleged misrepresentation. 103 S.Ct. at 1093. Because the Court found that the government's duty to use due care in supervising and inspecting construction was distinct from its duty of due care in communicating information, because the government's misstatements were not essential to Neal's claim, and because Neal's claim arose "out of other aspects of the Government's conduct," the Court concluded that Neal's claim for negligent supervision did not "arise out of misrepresentation" for the purposes of 28 U.S.C. § 2680(h). 103 S.Ct. at 1094.

■ Thus, the Supreme Court has made clear that 28 U.S.C. § 2680(h) is to be construed more broadly than the Metzes contend. While the Metzes would have us limit the exemptions of that section to those torts specifically named therein, *Shearer, Kosak* and *Neal* indicate that the phrase "arising out of" is to be given some meaning. The meaning which we derive from the foregoing Supreme Court cases is that a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to "arise out of" an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is "essential" to plaintiff's claim. *Neal*, 103 S.Ct. at 1094 ("In this case ... the Govern-

ment's misstatements are not *essential* to plaintiff's negligence claim"; "the partial overlap between these two tort actions does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well. Neither the language nor history of the Act suggests that when one aspect of the Government's conduct is not actionable under the 'misrepresentation' exception, a claimant is barred from pursuing a distinct claim *arising out of other aspects of the Government's conduct.*") (emphasis added). In other words, § 2680(h) bars "claims arising out of a certain type of factual situation," *Shearer*, 105 S.Ct. at 3042, leaving a plaintiff free, however, to pursue "a distinct claim arising out of other aspects of the Government's conduct." *Neal*, 103 S.Ct. at 1094.

Our task is to "identify 'those circumstances which are within the words and reason of the exception'—no less and no more." *Kosak*, 104 S.Ct. at 1523 n. 9. In the instant case, "the express words of the statute," *Shearer*, —— U.S. at ——, 105 S.Ct. at 3042, operate to bar the Metzes' remaining claims.[6]

1. George Metz's intentional infliction of emotional distress and intrusion into seclusion claims.

■ Mr. Metz claims that the seizure of his person renders the government liable for intentional infliction of emotional distress and intrusion into his private seclusion, a type of invasion of privacy.[7] Amended and Recast Complaint, Count II ¶ 3 in Record on Appeal at 207. Applying the *Block v. Neal* analysis, it is clear that any injury Metz has suffered as a result of these alleged torts stems from Metz's false arrest, a tort expressly exempted from the

6. *See Art Metal—U.S.A., Inc. v. United States,* 753 F.2d 1151 (D.C.Cir.1985) (government contractor's claim for injurious falsehood barred by 28 U.S.C. § 2680(h) as a claim arising out of libel or slander; applying *Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983)). In *JM Mechanical Corp. v. United States,* 716 F.2d 190, 195 (3d Cir. 1983), the Third Circuit applied *Block v. Neal* in the same manner as we do in this case. There the Third Circuit held that the

barred misrepresentation claim was not "essential" to the asserted claim.

7. The tort of invasion of privacy has four loosely related branches: appropriation, intrusion, public disclosure of private facts and false light. W. Prosser, *Handbook of the Law of Torts* § 117 (4th ed. 1971).

coverage of the FTCA.[8] In other words, the government's actions that constitute a claim for false arrest are essential to Mr. Metz's claims for intentional infliction of emotional distress and intrusion into seclusion. There is no other government conduct upon which such claims can rest. Thus, even though the claims may be distinct from a false arrest claim, any such difference is merely theoretical and not actual under the facts of this case. We conclude that these claims "arise out of" false arrest and are barred by 28 U.S.C. § 2680(h).

2. George Metz's false light claim and Ingrid Metz's intentional infliction of emotional distress claim.

Mr. Metz claims that statements made by FLETC and USDT officials placed him in a false light in the public eye. This tort is another branch of invasion of privacy. Mrs. Metz's claim for intentional infliction of emotional distress is based upon the allegedly false statements made to her by FLETC and USDT officials on the night of August 3, 1982. Assuming that the allegations forming the basis of these claims are true, we find that both claims are barred under the terms of the FTCA. The "wrong" about which the Metzes complain in both of these claims are the statements themselves, just as the "wrong" about which the plaintiff in *Shearer* complained was the battery that resulted in the death of her son. *See Shearer,* ── U.S. at ──, 105 S.Ct. at 3042 (plurality opinion). In this case the governmental statements complained of constitute slander, which is of course enumerated in § 2680(h). Applying the Supreme Court's analysis in *Neal,* the government officials' allegedly slanderous statements are essential to Mr. Metz's action for false light privacy and Ingrid Metz's claim for international infliction of emotional distress.[9] *See Block v. Neal,* 460 U.S. at 297–99, 103 S.Ct. at 1094. There is no other governmental action upon which these claims could rest. These claims, therefore, "arise out of" slander for the purposes of § 2680(h) and are not actionable under the FTCA.

3. Ingrid Metz's claim for intrusion into seclusion.

Ingrid Metz alleges that FLETC administrators McKinley and Graves violated her private solitude when they visited her residence on the night of August 3, 1982. The district court disposed of this issue on summary judgment by holding that there was no invasion of Mrs. Metz's privacy because, among other reasons,[10] "she willingly agreed to talk to the officials and freely admitted them into her house along with Father Carr." Record on Appeal at 392. On appeal, the Metzes contend that the FLETC officials would not have been admitted to the Metz home had they not grossly misrepresented the facts and their intentions to Father Carr. Because Mrs. Metz was in turn misinformed by Carr, the Metzes claim that her consent to the intrusion was not a valid waiver of her right to privacy, or at least there is a genuine issue

---

**8.** Although both parties, to some extent, look to Georgia law in analyzing whether the Metzes' claims fall within a § 2680(h) exception, the proper analysis is a comparison between the plaintiffs' claims and the "traditional and commonly understood definition" of the torts excepted by that section, rather than a comparison with the law of any particular state. *See United States v. Neustadt,* 366 U.S. 696, 706, 81 S.Ct. 1294, 1300, 6 L.Ed.2d 614 (1961); *Jimenez-Nieves v. United States,* 682 F.2d 1, 3–4 (1st Cir.1982).

**9.** Although we recognize that claims for intentional infliction of emotional distress do not necessarily depend on the falsity of a defend-

ant's statements, under the facts of this case, Mrs. Metz would not be able to state such a claim if the FLETC officials' statements were true. We have no trouble, therefore, finding that the allegedly slanderous statements are essential to Mrs. Metz's claim for intentional infliction of emotional distress in our application of the *Block v. Neal* analysis.

**10.** The district court also found that Georgia law required a physical invasion into a plaintiff's private solitude in order to make out an action for invasion of privacy, and that no such physical invasion was present in this case. Record on Appeal at 390–92.

of fact in this regard.[11]   Brief of Appellants at 48.

 Assuming, but expressly not deciding, that Ingrid Metz's consent was invalid, it is invalid solely because it was given in response to false statements made by FLETC officials.  Those allegedly false statements constitute the basis for a slander claim.  Because the alleged slander is essential to Ingrid Metz's assertion that her consent was invalid, and because that assertion is in turn essential to her claim for intrusion, we conclude that her claim for intrusion "arises out of" slander.  *See Block v. Neal,* 103 S.Ct. at 1094.[12]  Ingrid Metz's claim for intrusion into her private seclusion, therefore, is not actionable under the FTCA.

For the foregoing reasons, the decision of the district court is

AFFIRMED.

Glenn O. Starke, Andrus, Sceales, Starke & Sawall, Milwaukee, Wis., argued, for appellant.

Jerome F. Fallon, Tilton, Fallon, Lungmus & Chestnut, Chicago, Ill., argued, for appellee.

Before RICH, Circuit Judge, NICHOLS, Senior Circuit Judge, and NIES, Circuit Judge.

---

**11.** Although the district court granted the government's 12(b)(6) motion to dismiss for all claims except one, the district court converted this motion into a motion for summary judgment which was granted with respect to Ingrid Metz's claim for invasion of privacy.  Because of our disposition of this claim, we can assume the Metzes' version of the facts as true and eliminate any genuine issue of fact.

**12.** The fact that the injuries alleged in Mrs. Metz's claims for intentional infliction of emotional distress and intrusion into her private seclusion may be different from the injuries Mr. Metz might suffer as a result of slander does not alter our conclusion.  Section 2680(h) shields the government from all claims arising out of slander "and does not purport to distinguish among types of harm."  *See Kosak v. United States,* 679 F.2d 306, 308 (3d Cir.1982), *aff'd,* 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) (analyzing "arising in respect of" language of 28 U.S.C. § 2680(c)).