[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 30, 2000
THOMAS K. KAHN
CLERK

_____

No. 99-11551
_____

D. C. Docket No. 98-00149-1-CV-RWS

JBP ACQUISITIONS, LP,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA, Ex Rel:
the FEDERAL DEPOSIT INSURANCE CORPORATION,
in its corporate capacity and as successor to the
RESOLUTION TRUST CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 30, 2000)**

Before TJOFLAT, MARCUS and KRAVITCH, Circuit Judges.

MARCUS, Circuit Judge:

Plaintiff JBP Acquisitions, LP ("JBP") appeals the district court's order dismissing its tort claims for lack of subject matter jurisdiction. The court concluded that it did not have jurisdiction because the Plaintiff's tort claims fell within the "misrepresentation" exception to the Government's waiver of sovereign immunity in the Federal Tort Claims Act ("FTCA"). We agree and affirm the district court's ruling.

I.

The essential facts of this case are undisputed. JBP Acquisitions is a Pennsylvania limited partnership that purchases real property assets and loan portfolios secured by real estate for profit. On December 27, 1995, JBP purchased five nonperforming loans for $355,000.00 from the Resolution Trust Corporation ("RTC") at an RTC auction of assets taken over from failed financial institutions.[1] Among the loans purchased was one secured by low-income multi-family housing units located on four tracts of land near the Olympic Stadium in Atlanta, Georgia (the "Property"). JBP planned to rent the Property during the 1996 Olympic Games and then sell the units as low-income housing.

JBP alleges that ownership of the loan secured by the Property was

_____

[1] The Federal Deposit Insurance Corporation ("FDIC") has since succeeded the RTC. They will be referred to collectively as "RTC/FDIC."

transferred to it on January 31, 1996, the date on the Bill of Sale and Assignment of Loans from the RTC. Under the terms of the written contract between the RTC and JBP, the RTC was not obligated to actually deliver the loan documents to JBP until March 15, 1996.

Upon receipt of the loan file, JBP took steps to foreclose on the nonperforming loan in order to obtain title to the Property. At an undetermined time either before or after JBP's purchase of the loan pool, the Metropolitan Atlanta Olympic Games Authority ("MAOGA") initiated a condemnation action on the property in the Superior Court of Fulton County. Plaintiff alleges that during the course of these proceedings, the RTC/FDIC negotiated with MAOGA as if it were still the owner of the property and did not notify JBP that it was negotiating with MAOGA. On February 22, 1996, three weeks after the official transfer date of the loan to JBP, an Award of the Special Master of the Superior Court was entered indicating that an agreement had been reached between the RTC/FDIC and MAOGA in which the parties consented to the Property's condemnation and stipulated to an award of $163,462.00 based upon an independent appraisal of the Property. The condemnation award was funded by Peoples Town Development Corporation, a low-income housing developer.

On May 7, 1996, the Sheriff's sale and foreclosure measures instituted by

JBP were completed, and JBP recorded the deed to the Property. On the same day, MAOGA recorded its deed of title to the Property. Upon checking title just prior to recording the foreclosure deed, JBP discovered the pending condemnation of the Property. JBP attempted to intervene in the condemnation action asserting its ownership interest in the Property, but MAOGA had already bulldozed the housing units in preparation for the Olympics.

JBP then disputed ownership of the Property with Peoples Town, the group to which MAOGA had transferred its interest. JBP ultimately quit-claimed its interest in the Property to Peoples Town for $2,000,000.00. JBP argues, however, that this amount does not reflect the fair market value of the Property. On January 14, 1998, JBP filed suit in district court against the RTC/FDIC under the Federal Tort Claims Act, alleging breach of contract, conversion, trespass, negligence, and interference with property rights. JBP sought compensatory damages in the amount of $1.3 million, offset by the consideration already paid by People's Town, as well as punitive damages.

The Government moved to dismiss for lack of subject matter jurisdiction on the grounds that JBP's tort claims were barred by the "misrepresentation" exception to the FTCA, and that JBP's breach of contract claim was barred by the Little Tucker Act, 28 U.S.C. § 1346. Alternatively, the Government argued that

4

JBP's tort claims should be dismissed for failure to state a claim upon which relief could be granted.

On February 22, 1999, the district court granted the Government's motion to dismiss for lack of subject matter jurisdiction. As for the tort claims, the court found that "all of JBP's injuries arise not out of FDIC's negligent performance of operational tasks in connection with the loan transfer but, instead arise, solely out of RTC's failure to convey information to JBP about the pending condemnation proceedings and out of FDIC's misrepresentations to MAOGA that RTC still owned an interest in the property." Order at 4. The court held that "[h]aving found that these claims arise solely out of misrepresentations by the Government, they must be dismissed pursuant to § 2680(h)." Order at 4. The district court also concluded that it lacked jurisdiction over JBP's breach of contract claim because the Little Tucker Act, 28 U.S.C. § 1346, provides that breach of contract claims against the government in excess of $10,000 lie within the exclusive jurisdiction of the United States Court of Federal Claims. Order at 5-6. JBP does not challenge the district court's holding as to its breach of contract claim, but does challenge the dismissal of its tort claims.

## II.

We review <u>de novo</u> the district court's dismissal of an action for lack of

5

subject matter jurisdiction and its interpretation and application of statutory provisions.  See Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997); see also Pillow v. Bechtel Constr. Inc., 201 F.3d 1348, 1351 (11th Cir. 2000).

The law at issue in this case is clearly established and not in dispute. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994); see also United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941).  The terms of the federal government's "consent to be sued in any court define that court's jurisdiction to entertain the suit."  Sherwood, 312 U.S. at 586, 61 S.Ct. at 770.  The Federal Tort Claims Act provides a limited waiver of sovereign immunity  making the United States liable for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment . . . ."  28 U.S.C. § 1346(b).  Where the FTCA applies, the United States may be liable for certain torts "in the same manner and to the same extent as a private individual under like circumstances . . . ."  28 U.S.C. § 2674.

Congress, however, "adopted several exceptions to this consent to be sued,

6

which must be strictly construed in favor of the United States." McNeily v. United States, 6 F.3d 343, 347 (5th Cir. 1993); see also Baum v. United States, 986 F.2d 716, 719 (4th Cir. 1993) (noting that "waiver of immunity is tempered by a rather extensive list of exceptions"). If the alleged conduct falls within one of these statutory exceptions, the court lacks subject matter jurisdiction over the action. See Dalehite v. United States, 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953); Boda v. United States, 698 F.2d 1174, 1176 (11th Cir. 1983).

At issue in the present case is the "misrepresentation" exception to the FTCA. The misrepresentation exception bars any claim "[a]rising out of . . . misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). The test in applying the misrepresentation exception is whether the essence of the claim involves the government's failure to use due care in obtaining and communicating information. See Block v. Neal, 460 U.S. 289, 296, 103 S.Ct. 1089, 1093, 75 L.Ed.2d 67 (1983) (explaining that "[t]he essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies"); United States v. Neustadt, 366 U.S. 696, 706-07, 81 S.Ct. 1294, 1300-01, 6 L.Ed.2d 614 (1961) (holding that the breach of the "duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his

economic affairs, is only to state the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation,' . . . which there is every reason to believe Congress had in mind when it placed the word 'misrepresentation' before the word 'deceit' in § 2680(h)").

The exception covers actions for negligence when the basis for the negligence action is an underlying claim for misrepresentation. See Metz v. United States, 788 F.2d 1528, 1534 (11th Cir. 1986) (emphasizing that a "cause of action which is distinct from one of those excepted under 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim"); Rey v. United States, 484 F.2d 45, 49 (5th Cir. 1973) (barring a claim for negligence where the "negligently erroneous transmission of misinformation is the crucial element in the chain of causation from defendant's negligence to plaintiffs' damages);[2] Mt. Homes, Inc. v. United States, 912 F.2d 352, 355 (9th Cir. 1990) (holding that plaintiff's claim for failure to communicate correct sales tax information "is in essence an action for negligent misrepresentation"); Leaf v. United States, 661 F.2d 740, 742 (9th Cir. 1981)

---

[2] Fifth Circuit decisions issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

8

(holding plaintiff's negligence claim barred by misrepresentation exception because the alleged false representation was "within the chain of causative events upon which plaintiff's claim is founded").

"It is the substance of the claim and not the language used in stating it which controls" whether the claim is barred by an FTCA exception. See Gaudet v. United States, 517 F.2d 1034, 1035 (5th Cir. 1975). Thus, a plaintiff cannot circumvent the misrepresentation exception simply through the artful pleading of its claims. See Atorie Air, Inc. v. Fed. Aviation Admin., 942 F.2d 954, 958 (5th Cir. 1991) (rejecting plaintiff's attempt to recast a misrepresentation claim as one for breach of duty of good faith and fair dealing and explaining that "causes of action distinct from those excepted under section 2680(h) are nevertheless deemed to be barred when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action"); Mt. Homes, 912 F.2d at 356 (analyzing whether plaintiff's claim fell within the misrepresentation exception and explaining that "[a]lthough it has couched its complaint in terms of the breach of a duty to prepare the documents adequately, we look beyond the characterization to the conduct on which the claim is based"); Lambertson v. United States, 528 F.2d 441, 443 (2d Cir. 1976) (explaining that "[i]n determining the applicability of the 2580(h)

9

exception, a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts").

JBP argues that the misrepresentation exception does not bar its claims because its claims against the Government are not grounded in "misrepresentation," but instead in the Government's negligent performance of an operational task. In Block, the Supreme Court made clear that the misrepresentation exception "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." Block, 460 U.S. at 297, 103 S.Ct. at 1093-94 (holding that respondent's claim against the government for negligent supervision of the construction of her home was not barred by the misrepresentation exception because the government's "duty to use due care to ensure that the builder adhere to previously approved plans and cure all defects before completing construction is distinct from any duty to use due care in communicating information to respondent"); see also Guild v. United States, 685 F.2d 324, 325 (9th Cir. 1982) (explaining that "[t]he Government is liable for injuries resulting from negligence in performance of operational tasks even though misrepresentations are collaterally involved. It is not liable, however, for injuries resulting from commercial decisions made in reliance on government

misrepresentations."). Specifically, JBP argues that the Government was negligent in selling it the loan securing the Property and then continuing to act as though it had an ownership interest in the Property by negotiating a condemnation award with MAOGA. JBP contends that its tort claims are based on the Government's negligent performance of a particular task, not on the Government's misrepresentations, and, therefore, the claims are not barred by the misrepresentation exception.

JBP's characterization of its claims is unpersuasive. The basis for JBP's claims against the Government is the Government's misrepresentations to JBP and MAOGA. JBP's complaint makes clear that the Government's failure to communicate information to JBP about the Government's negotiations with MAOGA is central to its claim for damages.[3] The complaint alleges that "[t]he RTC/FDIC did not notify Plaintiff that it was negotiating with MAOGA and PeoplesTown as if it still owned the Property, did not notify Plaintiff of the existence of the condemnation action, and did not cease negotiations upon selling the Property in question to Plaintiff." Complaint, ¶ 14. Also central to JBP's claims is the Government's misrepresentation to MAOGA regarding its continued

---

[3] The misrepresentation exception encompasses failure to communicate as well as miscommunication. See Neustadt, 366 U.S. at 706-07, 81 S.Ct. at 1300-01.

11

ownership of the loan during the condemnation proceeding. While JBP contends that the basis for its tort claims is the Government's negligent act of continuing negotiation with MAOGA subsequent to its sale of the ownership interest in the Property to JBP, the basis of the Government's negligence, in fact what makes it negligence in the first place, is the Government's misrepresentation to MAOGA regarding its current ownership of the loan. It is that misrepresentation which is the "crucial element of the chain of causation" upon which JBP's claims are founded. See Rey, 484 F.2d at 49; see also Leaf, 661 F.2d at 742 (failure to provide information to plaintiffs was the misrepresentation "at the heart of plaintiffs' complaint, however deftly they have attempted to avoid using the word"). Without the false representation by the Government that it was the owner of the Property, the consent agreement in the condemnation proceedings never would have been consummated, the Property would not have been demolished, and JBP would have suffered no injury.

Moreover, the Plaintiff does not point to any negligence by the Government that is independent of or in any real way removed from its misrepresentations to JBP and MAOGA. The only "task" JBP complains of is the Government's selling the loan to JBP and then continuing to negotiate with MAOGA, just as though it still had an ownership interest in the Property. Again, we emphasize that at its core

12

the negligent "act" is the Government's misrepresentation to MAOGA regarding its ownership interest in the Property and its misrepresentation to JBP regarding its continued negotiation in the condemnation proceedings.

JBP also suggests that its claims against the Government are not barred by the misrepresentation exception because it does not allege that the Government directly misrepresented any facts to JBP. As we have noted, the Government's failure to communicate to JBP the fact that it was engaged in condemnation proceedings with MAOGA is central to JBP's claims, and failure to communicate, as well as direct miscommunication, is encompassed by the misrepresentation exception. See Neustadt, 366 U.S. at 706-07, 81 S.Ct. at 1300-01. Moreover, it does not matter for purposes of the misrepresentation exception whether the misrepresentations causing JBP's claims were made directly to it or to some third party. See Schneider v. United States, 936 F.2d 956, 960 (7th Cir. 1991) (holding plaintiffs' claims, based on the government's misrepresentation to the private builder from whom plaintiffs bought their homes, were barred by the misrepresentation exception); Baroni v. United States, 662 F.2d 287, 288-89 (5th Cir. 1981) (holding plaintiff homeowners' claims were barred by the misrepresentation exception even though the government's miscalculation was communicated to the real estate developer and not to the plaintiffs directly). Thus,

13

even if the Government's misrepresentations were only to MAOGA and not to JBP, this fact is legally irrelevant to the determination of whether JBP's claims against the Government are barred by the FTCA.

In short, the district court properly concluded that the underlying conduct essential to JBP's tort claims was not the Government's negligent performance of a particular task in connection with the loan transfer, but instead the Government's failure to convey any information to JBP about the pending condemnation proceedings, and its misrepresentations to MAOGA regarding the Government's ownership interest in the Property. Accordingly, we must affirm the dismissal of JBP's tort claims for lack of subject matter jurisdiction.

AFFIRMED.