[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  12-16590
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cv-00976-RDB-DAB


WALTER CADMAN,

Plaintiff-Appellee,

versus

UNITED STATES OF AMERICA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 29, 2013)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Walter Cadman appeals the district court's dismissal of his claim against the

United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1),

2671-80. Because we agree with the district court that Mr. Cadman's claim is barred by the libel-slander-misrepresentation exception to the FTCA, we affirm.

## I

In 2008, Mr. Cadman, a federal contractor for Booz-Allen-Hamilton, was hired by Immigration and Customs Enforcement to help run its "Secure Communities" program. The program was controversial because it required participating state and local law enforcement agencies and employees to submit arrest information to ICE that could later be used for immigration and removal proceedings.

Under the supervision of ICE officials, Mr. Cadman was directed to produce position papers indicating whether participation in the program was statutorily mandated or optional. Mr. Cadman subsequently delivered position papers to his supervisors presenting his opinion that the program was mandatory.

In 2009, ICE officials decided not to enforce mandatory participation and created an official opt-out policy. When ICE employees continued to take varying positions on the issue, Mr. Cadman was asked to explore ways to deal with certain localities' resistance to participation. Mr. Cadman felt that the resistance was politically driven and in response to one city's choice to opt out of the program, he wrote an e-mail saying, "This is not good, not good at all! . . . Time perhaps for a full court press?"

2

ICE's inconsistent positions drew attention from a Congressional Representative, the public, and the press. Amidst this concern, a large number of e-mails (including Mr. Cadman's) were released pursuant to a Freedom of Information Act request. During this controversy, John Morton and Brian Hale, agents of ICE, published statements attributing ICE's inconsistent positions and problems to Mr. Cadman. In March of 2011, ICE and Booz-Allen-Hamilton terminated their contracts with Mr. Cadman. Agent Morton and Agent Hale issued further communications to third parties implying that Mr. Cadman's termination "would cure or had cured the issues."

Mr. Cadman filed an administrative claim with ICE for false light/invasion of privacy and negligence under the FTCA. After ICE denied the claim in June of 2012, Mr. Cadman filed suit against the United States, alleging that Agents Morton and Hale had made false statements about him and that their supervisors had behaved negligently by failing to stop or correct the statements. After determining that Mr. Cadman's claims all "arose out of" certain torts—libel, slander, and misrepresentation—which are expressly exempted under a provision of the FTCA, the district court dismissed the complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## II

We review *de novo* a district court's decision to dismiss a complaint for lack

of subject-matter jurisdiction under the FTCA based on 28 U.S.C. § 2680(h). *See*

*JBP Acquisitions, LP v. United States*, 224 F.3d 1260, 1263 (11th Cir. 2000). We

accept the well-pleaded factual allegations of Mr. Cadman's complaint as true. *See*

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

## A

"[S]overeign immunity bars suit against the United States except to the

extent that it consents to be sued." *Means v. United States*, 176 F.3d 1376, 1378

(11th Cir. 1999). The FTCA provides a limited waiver of sovereign immunity in

some situations, and federal district courts have jurisdiction over certain tort

actions against the United States. *See* 28 U.S.C. § 1346(b); *Means*, 176 F.3d at

1378-79. This limited waiver of sovereign immunity does not include suits "arising

out of . . . libel, slander, [or] misrepresentation . . . ." *See* 28 U.S.C. § 2680(h).

FTCA exemptions, like the one found in § 2680(h), are strictly construed in favor

of the United States. *See JBP*, 224 F.3d at 1263.

Mr. Cadman correctly notes that the substantive law which governs his

claims of false light/invasion of privacy and negligence is District of Columbia

law. *See* 28 U.S.C. § 1346(b)(1) (stating that liability is determined in accordance

with the "law of the place where the act or omission occurred"). The determinative

issue on appeal, however, involves a matter of federal law: whether Mr. Cadman's

alleged false light/invasion of privacy and negligence claims are barred by §

2680(h). *See, e.g.*, *Johnson v. United States*, 788 F.2d 845, 851 (2d Cir. 1986) ("The scope of § 2680(h) is a matter of federal law.").

**B**

More than twenty-five years ago, we specifically addressed whether the torts of invasion of privacy and intentional infliction of emotional distress come within the § 2680(h) exemption. *See Metz v. United States,* 788 F.2d 1528, 1532 (11th Cir. 1986). We held in *Metz* that the exceptions in the FTCA are not limited to the torts specifically named, but instead encompass situations where "the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim." *Id*. at 1534. *See also O'Ferrell v. United States*, 253 F.3d 1257, 1265-66 (11th Cir. 2001) (applying *Metz* and holding that false light/invasion of privacy claims based on defamatory statements were barred by § 2680(h)).

Our sister circuits have also ruled that claims for false light/invasion of privacy are barred by the libel and slander exception in § 2680(h). *See Wuterich v. Murtha*, 562 F.3d 375, 379-81 (D.C. Cir. 2009) (holding that invasion of privacy and false light claims arose out of libel or slander and were barred); *Kugel v. United States*, 947 F.2d 1504, 1507 (D.C. Cir. 1991) (concluding that claims based on "dissemination of [defamatory] information" were barred by the FTCA's exemptions). *See also Johnson v. Sawyer*, 47 F.3d 716, 725 (5th Cir. 1995) (noting

5

that the district court held a false light claim was barred because "[i]ts essence is injury to [plaintiff's] reputation, and it therefore falls under 28 U.S.C. § 2680(h) . . . ."); *Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1206 (9th Cir. 1988) (rejecting an "attempt to fashion the slander and libel claims into a claim for negligent infliction of emotional distress . . . " under the FTCA).

The underlying conduct in *Metz* and *O'Ferrell*—government officials' statements about the plaintiffs—is similar to the alleged statements that harmed Mr. Cadman here. *See Metz*, 788 F.2d at 1535; *O'Ferrell*, 253 F.3d at 1265-66. The fact that there was "no other governmental action upon which the [false light and intentional infliction of emotional distress] claims could rest" was dispositive in *Metz* and *O'Ferrell*. *See* 788 F.2d at 1535; 253 F.3d at 1265-66. This same rationale governs here. At bottom, all of the allegedly tortious actions here are based on "statements, representations, or imputations," and there is no other independent government action on which Mr. Cadman's claims can rest. We therefore agree with the district court that Mr. Cadman's claims come within, and are barred by, the libel-slander-misrepresentation exemption of the FTCA.

## C

Mr. Cadman argues that District of Columbia law recognizes an action for false light/invasion of privacy different from a traditional action for defamation. He says that the "representations made about [him] were not necessarily false," and

so, "they could not have given rise to an action for defamation."[1] As we explained in *Metz*, however, the "proper analysis is a comparison between the plaintiffs' claim and the 'traditional and commonly understood definition' of the torts excepted by that section, rather than a comparison with the law of any particular state." 788 F.2d at 1535 n.8. *See also* Rodney A. Smolla, Law of Defamation § 10:10 (2d ed. 1999) (explaining that any distinction between false light/invasion of privacy and defamation is "often elusive . . . and not completely satisfactory"). Accordingly, we reject Mr. Cadman's argument that his possible inability to recover for defamation in the District of Columbia necessarily means that "his claims must not be for 'libel [or] slander' under the FTCA."

**D**

On appeal, Mr. Cadman attempts to re-characterize his negligence claims. In his complaint, Mr. Cadman alleged that the ICE agents' statements about him were negligent, and that there was an overall failure by the supervising agents who were in charge of the Secure Communities program to train and supervise Agents Morton and Hale and to mitigate the harm caused by the statements. Mr. Cadman urges in his brief that "those directly in charge" of the program did not properly present his work product to Agent Morton and Agent Hale. Moreover, he says that those in charge failed to advise Agent Morton to review the documentation, which

---

[1] *See Jankovic v. International Crisis Group*, 429 F. Supp. 2d 165, 173 (D.D.C. 2006) (stating that a "false and defamatory statement" is a required element for a defamation claim).

caused him to "erroneously attribute the problems" with the program to Mr. Cadman and to "take direct action to terminate [his] employment."

Even if we accept Mr. Cadman's re-characterization of the negligence claims, they cannot survive for two main reasons. First, the claims cannot circumvent § 2680(h)'s bar because the sole basis for any harm caused to Mr. Cadman were the *statements* made to third parties by Agent Morton and Agent Hale that cast him in an alleged false light. *See O'Ferrell*, 253 F.3d at 1265-66 (rejecting an attempt to use a "negligent supervision" theory to avoid the holding of *Metz*). No amount of "semantical recasting" can alter this fact. *See United States v. Shearer*, 473 U.S. 52, 55 (1985) (stating that "no semantical recasting of events [could] alter the fact that battery" – which was barred by § 2680(h) – was the cause of the injury)). Second, the portion of the negligence claim alleging a "failure to investigate," which purportedly led to Mr. Cadman's termination from Booz-Allen-Hamilton, fails because the harm—interference with contract rights— is another tort expressly barred by § 2680(h). *See* 28 U.S.C. § 2680(h) (exempting claim arising out of "interference with contract rights").

## IV

For the foregoing reasons, the district court's dismissal of Mr. Cadman's complaint is affirmed.

**AFFIRMED.**

8