[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15586
Non-Argument Calendar
_____

D.C. Docket No. 6:10-cv-408-PGB-KRS

RICHARD L. GOBLE,

                                                Plaintiff–Appellant,

versus

TIMOTHY WARD, et al.,

                                                Defendants–Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 22, 2015)

Before HULL, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Richard L. Goble was the target of a previous civil

enforcement action brought by the Securities and Exchange Commission (SEC).

During the enforcement action, the SEC liquidated Goble's company and ultimately the district court found Goble liable for securities fraud and for aiding and abetting violations of securities law. It also enjoined Goble from future violations of securities laws and permanently restrained him from seeking a securities license or engaging in securities business. Goble appealed the district court's finding, and in *SEC v. Goble*, 682 F.3d 934 (11th Cir. 2012), we affirmed the district court's judgment on the aiding and abetting claims, but reversed the district court's judgment on the securities fraud claim. We also vacated several portions of the district court's injunction, including portions "that bar[red] Goble from procuring a securities license, engaging in the securities business, or violating [securities law]." *Id.* at 953.

Following this partial vindication, and alleging wrongdoing and negligence committed by governmental entities and private individuals, Goble sued ten defendants involved in the liquidation of his company. The district court dismissed each claim. Goble appeals these dismissals and the three orders that denied his motions to amend. We affirm.

## I.  BACKGROUND

### A.    Facts[1]

At the beginning of 2008, Goble was the director of North American

Clearing Corporation (North American).  On May 27, 2008, Defendant Securities

and Exchange Commission (SEC) sued North American for improperly liquidating

customer accounts.  Relying "almost entirely" on statements from North

American's president (Defendant Bruce Blatman) and North American's chief

financial officer (Defendant Timothy Ward), the SEC brought a civil enforcement

action against Goble alleging that he had liquidated customer accounts to avoid

insolvency.  No investigator spoke to Goble before the SEC filed the civil

enforcement action.

The SEC's complaint included a false allegation that North American's

customer accounts lacked the amount of money required under federal securities

law.  The false allegation arose from the SEC's use of a formula that differed from

Goble's, yet the SEC never spoke to Goble, who could have corrected the SEC's

misunderstanding.  In reliance on Blatman and Ward, the complaint also falsely

alleged that North American had unlawfully "swept" customer money market

accounts and moved the money from those accounts into North American's

operating accounts.  Although the SEC doubted the truth of this allegation, it never

---

[1]  The following facts come from the operative complaint.

3

bothered to speak to Goble, who again could have corrected the error.  In reality, each "sweep" and transfer had occurred with customer consent; no sweep was made to prevent North American from failing; and no sweep offset North American's basic operating expenses.  The SEC could have discovered all of the above simply by questioning Goble, but it chose not to do so.

In the SEC's civil enforcement action against Goble, the SEC requested an ex parte temporary restraining order and a receiver for North American; the court issued an order granting both requests.  Two months later, Defendant Securities Investor Protection Corporation (SIPC) (acting through Defendant Josephine Wang and Defendant Christopher Larosa) began liquidation of North American.  The judge overseeing the SEC's action transferred the case to bankruptcy court.  Throughout the receivership and the bankruptcy litigation, SIPC and the SEC misrepresented "financials" to the bankruptcy court.  Relying on the misrepresentations, the bankruptcy court "destroy[ed]" North American.  During the receivership, the SEC paid Ward and Blatman more than the wages they had received when employed by North American.  Under 15 U.S.C. § 78eee, SIPC applied for and received a protective decree, but because an inexperienced employee completed the application, it contained inaccurate information.  The application estimated that North American was insolvent by $2.5 million, but North American was actually solvent by $3 million.  Soon after the bankruptcy

4

court entered the protective order, the bankruptcy trustee discovered that SIPC had miscalculated North American's solvency. Nonetheless, the bankruptcy trustee continued the liquidation of North American.

Defendant Financial Industry Technical Services Inc. (FITS), which "provide[s] operational support and project management services to the financial industry," employed Defendant Henry Lange as chief executive officer. Lange "worked with" the bankruptcy trustee and SIPC to liquate North American. Lange misrepresented "key financial information at stages of the receivership and bankruptcy." Further, Lange "was involved in covering up the true healthy financial condition of [North American] and shredding key financial documents." Similarly, FITS employed Defendant John Rizzo, who "worked with . . . SIPC in the dismantling of [North American], misrepresenting [North American's] financial information, and shredding and hiding important financial documents."

As noted, in the SEC's enforcement action, the district court found Goble liable for securities fraud and aiding and abetting security law violations. We affirmed in part and reversed in part. Thereafter, Goble initiated the district court proceedings that are the subject of this present appeal.

## B.    District Court Proceedings

Instituting two actions, Goble sued almost everyone involved in liquidating North American. Thereafter, he moved to consolidate the two cases and to amend

5

the complaint.  The district judge granted the motion to consolidate and referred

for report and recommendation the motion to amend the complaint.  In accord with

the magistrate judge's recommendation, the district judge denied Goble's motion

to amend because (among other reasons) the attached, proposed complaint[2]

contained futile claims.  The order directed Goble to remove the futile claims and

to move again to amend the complaint.  Specifically, the order directed Goble to

correct the following errors:

> Based on the facts asserted in the proposed . . . Complaint, Goble is
> hereby **PROHIBITED** from naming any of the following defendants
> in the proposed amended complaint:  (1) the SEC and its employees,
> as to [Federal Tort Claims Act] claims; (2) [the receiver], his law firm,
> and his attorneys and other agents; and (3) [the trustee], his law firm,
> and his attorneys and other agents.  Based on the facts asserted in the
> proposed . . . Complaint, Goble is hereby **PROHIBITED** from
> asserting causes of action for:  (1) bankruptcy fraud; (2) aiding and
> abetting bankruptcy fraud; (3) violation of 11 U.S.C. Section 523; and
> (4) legal malpractice against any Defendant with whom there is no
> privity of contract.  Goble may assert tort claims against the United
> States only to the extent it has waived sovereign immunity.  The
> proposed amended complaint must identify what each defendant did
> that could plausibly make it liable for the corresponding claim, and
> each count must clearly identify a cause of action recognized under
> governing law.

Goble appealed the order denying his motion to amend and moved to stay

the case.  The district judge denied the motion to stay because the appeal was

---

[2]  Goble named the proposed complaint the "fourth amended complaint."  Presumably, he used
"fourth" because his first action contained a complaint and his second action contained both a
complaint and an amended complaint.  This opinion refers to the "fourth amended complaint" as
the "first proposed complaint."

6

frivolous[3] and directed Goble to move within fourteen days to amend the complaint. The district judge stated, "Failure to file a renewed motion for leave to file an amended complaint, accompanied by a proposed amended complaint, within the time provided in this Order will result in this case proceeding on the Amended Complaint." Goble timely moved to amend the complaint and attached a second proposed complaint. The district judge referred the motion for disposition, and the magistrate judge denied the motion. The denial explained that the second proposed complaint ignored the district judge's order by, for example, (1) suing the SEC and two SEC employees, (2) suing agents of the trustee, (3) failing to "identif[y] what each defendant did that could plausibly make it liable for the corresponding claim against it," and (4) suing for unrecognized causes of action (e.g., "corruption" and "obstruction"). The order did not invite Goble to move again to amend the complaint.

Forty-five days later, Goble again moved to amend the complaint and attached a third proposed complaint. The district judge referred the motion to the magistrate judge for disposition, and the latter denied the motion because it was untimely and because Goble failed to show "good cause" for amending the complaint. Thus, the parties proceeded under the amended complaint filed in the second action. In that complaint, Goble had sued ten defendants—the United

---

[3] Approximately four months later, the Eleventh Circuit *sua sponte* dismissed the appeal for lack of jurisdiction.

States, the SEC, SIPC, Blatman, Ward, Lange, FITS, Rizzo, Wang, and Larosa—each for negligence, gross negligence, abuse of process, civil conspiracy, and conversion.

Each Defendant moved to dismiss the complaint, and Goble responded. The district judge referred each motion for report and recommendation. Adopting the magistrate judge's reports and recommendations, the district judge granted (or granted in part) each motion and dismissed each claim. The district judge (1) dismissed with prejudice each claim against FITS, Lange, and Rizzo (whom the bankruptcy trustee had hired) for lack of subject matter jurisdiction because Goble had failed to obtain leave to sue the bankruptcy trustee; (2) dismissed with prejudice each claim against the United States and the SEC because neither party had waived sovereign immunity; (3) dismissed with prejudice each claim against SIPC, Wang, and Larosa because Florida's litigation privilege conferred them absolute immunity from the first four counts and the only remaining claim failed to state a claim against them; and (4) dismissed without prejudice the claims against Ward and Blatman because Goble failed to plead an independent basis for jurisdiction and the court declined to exercise supplemental jurisdiction.

## II. APPEAL AND SCOPE OF REVIEW

Although Goble appeals twelve orders, his initial brief, even when liberally construed, disputes only four orders: the three orders denying Goble's motions to

8

amend the complaint and the order dismissing each claim.  Further, as to the dismissal order, Goble's initial brief disputes only the dismissal of the claims against the United States and the SEC.

Arguably, Goble raises additional issues arising out of the district court's orders in a reply brief that is very difficult to decipher.  But we do not consider those issues because "[a]rguments not properly presented in a party's initial brief or raised for the first time in a reply brief are deemed waived."  *Egidi v. Mukamai*, 571 F.3d 1156, 1163 (11th Cir. 2009); *accord Holland v. Gee*, 677 F.3d 1047, 1066 (11th Cir. 2012) ("The law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").  Even a *pro se* litigant is not forgiven for failing to raise an issue in the initial brief.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned.  Moreover, we do not address arguments raised for the first time in a *pro se* litigant's reply brief." (citations omitted)).  Accordingly, we address only the arguments raised in the initial brief:  that is, Goble's arguments that the district court erred when it denied his motions to amend and dismissed the claims against the United States and the SEC.

### III. STANDARD OF REVIEW

"We review the denial of a motion to amend a complaint for an abuse of discretion. 'However, when the district court denies the plaintiff leave to amend due to futility, we review the denial *de novo* because it is concluding that as a matter of law an amended complaint would necessarily fail.'" *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1040 (11th Cir. 2006) (citation omitted). "Sovereign immunity is a question of law that we review de novo." *Johnson v. Conner*, 720 F.3d 1311, 1313 (11th Cir. 2013).

### IV. ANALYSIS

We first review the dismissal of the five counts in the operative complaint and then review the denial of Goble's motions to amend the complaint.

### A.     Dismissal of the Claims Against the United States and the SEC

Goble alleged five claims against the United States and the SEC—negligence, gross negligence, abuse of process, civil conspiracy, and conversion. Relying on sovereign immunity, the district judge dismissed each claim. "[A]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Arguing that the Federal Tort Claims Act (FTCA) does constitute a waiver of sovereign immunity, Goble contends that his claims against the United States and the SEC should not have been dismissed. *See Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015)

10

("Through the enactment of the FTCA, the federal government has, as a general matter, waived its immunity from tort suits based on state law tort claims.").

### 1.    Claims Against the SEC

The FTCA's waiver applies only to the federal government and not to agencies within the federal government. *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998) ("[A]n agency itself cannot be sued under the FTCA."); *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) ("In view of this explicit statutory language, the courts have consistently held that an agency or government employee cannot be sued *eo nomine* under the Federal Tort Claims Act. Thus, an FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction." (citation omitted)). For this reason, the district judge correctly dismissed the claims against the SEC. But even if the SEC could be sued, it would be immune for the same reasons (discussed below) as the United States.

Goble's brief argues that, leaving aside the waiver found in the FTCA, the SEC also waived sovereign immunity in a letter it wrote to Goble. The magistrate judge and the district judge persuasively explain that Goble misconstrued the substance of the SEC's letter. However, even if the letter had unequivocally purported to waive the SEC's sovereign immunity, the latter would still retain that immunity because only Congress can waive an agency's sovereign immunity.

11

*Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011) ("[A] letter [from a United States embassy is] not [an] act[] of Congress, so [it] cannot effect a waiver of sovereign immunity."); 14 Charles Alan Wright et al., *Federal Practice and Procedure* § 3655 (3d ed. 2015) ("[An] agency may be sued only if Congress has consented to the action, the reason being that the United States is the real party in interest in the litigation."  (footnote omitted)); *see also* 14 Charles Alan Wright et al., *Federal Practice and Procedure* § 3654 (3d ed. 2015) ("It is a well-settled and logical principle that only Congress can waive the United States' right to assert the defense of sovereign immunity, and it must do so explicitly.").

2.    Claims Against the United States

The United States argues that the FTCA's broad waiver applies to Goble's tort claims against the United States.  However, "that which the Sovereign gives, it may also take away, and the Government has done so through statutory exceptions."  *Zelaya*, 781 F.3d at 1322.  Thus the question here is whether statutory exceptions to sovereign immunity apply to Goble's claims against the federal government.  We conclude that two exceptions—28 U.S.C. §§ 2680(a) and (h)—apply and confer sovereign immunity against each of Goble's claims against the United States.

Count I alleges negligence against the United States because it "negligently represented false corporate financial and operational information to the Courts,

which resulted in a needless Temporary Restraining Order, liquidation, and destruction of [North American] as an operating firm."  In other words, Count I alleges negligent misrepresentation against the United States.  But under 28 U.S.C. § 2680(h), the United States retains sovereign immunity against "[a]ny claim arising out of . . . misrepresentation."  And that "exception covers actions for negligence when the basis for the negligence action is an underlying claim for misrepresentation."  *JBP Acquisitions, LP v. U.S. ex rel. FDIC*, 224 F.3d 1260, 1264 (11th Cir. 2000).  Accordingly, § 2680(h) bars Count I.

Count II alleges nearly the same claim against the United States.  The primary difference is that Count II alleges gross negligence, not negligence.  However, that difference is insufficient for Count II to escape § 2680(h).  *See United States v. Neustadt*, 366 U.S. 696, 702 (1961) ("[Section] 2680(h) comprehends claims arising out of negligent, as well as willful, misrepresentation."); *Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003) ("The misrepresentation exception shields government employees from tort liability for failure to communicate information, whether negligent, or intentional."), *cited with approval in Zelaya v. United States*, 781 F.3d 1315, 1335 (11th Cir. 2015).  Accordingly, § 2680(h) bars Count II.

13

Count III alleges abuse of process against the United States.  However, Section 2680(h) retains the United States' sovereign immunity against "[a]ny claim arising out of . . . abuse of process."  Accordingly, § 2680(h) bars Count III.

Count IV alleges civil conspiracy against the United States because it "acted [along with others] with a common purpose to falsely report [North American]'s financial information and operational information to the Court in cases against [North American], using doctored and false financial statements."  Although Count IV alleges civil conspiracy, not misrepresentation, § 2680(h)'s clause forbidding "[a]ny claim arising out of . . . misrepresentation[ or] deceit" applies to Count IV. "'It is the substance of the claim and not the language used in stating it which controls' whether the claim is barred by an FTCA exception.  Thus, a plaintiff cannot circumvent the misrepresentation exception simply through the artful pleading of its claims." *JBP Acquisitions*, 224 F.3d at 1264 (citation omitted). Because Count IV relies on the United States' "falsely report[ing]" information to a court, Count IV is a claim "arising out of . . . misrepresentation[ or] deceit." Thus, §2680(h) bars Count IV.

Count V alleges conversion against the United States because it "intentionally stole and appropriated . . . computer equipment, office supplies, and proprietary and confidential information."  Conversion is not excluded under § 2680(h) (unless the substance of the conversion claim alleges a tort otherwise

named in § 2680(h)).  *Levin v. United States*, 133 S. Ct. 1224, 1228 n.1 (2013)

("Section 2680(h) does not remove from the FTCA's waiver all intentional torts,

*e.g.*, conversion . . . ."); *CHoPP Computer Corp. v. United States*, 5 F.3d 1344,

1347 (9th Cir. 1993) ("[The plaintiff]'s conversion claim can be brought under the

FTCA.").  Nonetheless, § 2680(a) bars Count V because § 2680(a) retains

sovereign immunity against:

> [a]ny claim based upon an act or omission of an employee of the
> Government, exercising due care, in the execution of a statute or
> regulation, whether or not such statute or regulation be valid, or based
> upon the exercise or performance or the failure to exercise or perform
> a discretionary function or duty on the part of a federal agency or an
> employee of the Government, whether or not the discretion involved
> be abused.

Section 2680(a) applies if two requirements are satisfied.  Under the first

requirement, "the conduct that forms the basis of the suit must involve an element

of judgment or choice by the employee."  *Zelaya*, 781 F.3d at 1329.  More

specifically, "the controlling statute or regulation [must not] mandate[] that a

government agent perform his or her function in a specific manner."  *Id.*  Under the

second requirement, the judgment or choice must "be inherently grounded in

considerations of policy."  *Id.* at 1330.  But "it must be presumed that the agent's

acts are grounded in policy."  *Id.* at 1330.

Count V fails to explain the circumstances under which the United States

converted property, but the United States reasonably infers Count V to allege that

the United States took property of his as part of the SEC's investigation. Federal statutes and regulations empower SEC investigators with discretion in investigating violations of securities law. 15 U.S.C. § 78u(a)(1) ("The Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate [securities laws]."); 15 U.S.C. § 78u(b) ("For the purpose of any [securities] investigation . . . , any member of the [SEC] . . . is empowered to . . . take evidence[] and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry."); *Zelaya*, 781 F.3d at 1328 ("[T]he SEC has discretionary authority to pursue violations of the securities laws under . . . statutory provisions and regulations."); 17 C.F.R. § 202.5(a) ("The Commission may, in its discretion, make such formal investigations . . . as it deems necessary to determine whether any person has violated, is violating, or is about to violate . . . the federal securities laws . . . ."). Thus, the SEC's acquisition of business property during the investigation satisfies § 2680(a)'s first requirement.

Because federal law empowers the SEC with discretion as to how it handles an investigation, we reasonably assume that the SEC investigators ground their investigative decisions on policy considerations. Goble's initial brief ignores this second requirement of § 2680(a), however. Further, Count V (which contains only

16

three paragraphs) offers no allegation suggesting that the SEC investigators exercised their discretion on grounds other than policy when they took for inspection the business property.

We recognize that Count V states that the United States "intentionally stole and appropriated . . . computer equipment, office supplies, and proprietary and confidential information." However, "in examining whether an employee's discretion is of the type grounded in public policy, one uses an objective test, and the employee's subjective intent is irrelevant." *Zelaya*, 781 F.3d at 1330. As *Cohen v. United States* explains:

> "In [applying § 2680(a)'s second requirement], we do not focus on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting." Instead, we "focus on the nature of the actions taken and on whether they are susceptible to policy analysis."

151 F.3d 1338, 1341 (11th Cir. 1998) (citation omitted). Under *Cohen*, Count V's intent allegations are irrelevant to determining whether § 2680(a)'s second requirement applies to the SEC's conversion, and the SEC's investigation decisions are "susceptible to policy analysis." Thus, the SEC's removal of business property during the investigation satisfies § 2680(a)'s second requirement.

In sum, federal statutes and regulations empower SEC investigators with discretion in investigating violations of securities law. Thus, we presume that

investigative decisions are grounded in policy because they are "susceptible to policy analysis." Neither Count V nor Goble's briefs overcome that presumption. Thus, both of § 2680(a)'s requirements are satisfied, and § 2680(a) bars Count V.

**B.    Denial of the Motions to Amend the Complaint**

On three occasions, Goble moved to amend the complaint. The district court denied each motion. The district court denied the first two motions because each included a proposed complaint that alleged futile claims. The district court denied the third motion as untimely and unsupported by good cause.

### 1.    Goble's First and Second Motions to Amend

Goble's initial brief argues generally that the claims in his first and second proposed complaints were not "frivolous." However, Goble's initial brief fails to explain why any claim specific to the first or second proposed complaint is not futile, and indeed each claim is futile.

Together, the first and second complaint allege twenty claims against the SEC and seventeen claims against the United States. As discussed above, the FTCA permits no claim against the SEC and thus each of the twenty claims against the SEC is futile. As to the claims against the United States, we (like Goble) avoid discussing each claim individually, but a review of the seventeen claims confirms that each is futile. Eight of the claims are near-copies of claims from the operative complaint, which (as discussed above) alleges against the United States only futile

18

claims.  The remaining nine claims are futile for the same or similar reasons.  For example, Count XI of the first proposed complaint alleges defamation against the United States, but 28 U.S.C. § 2680(h) reserves the United States' sovereign immunity against "[a]ny claim arising out of . . . libel[ or] slander."  Accordingly, the district court correctly denied as futile Goble's first two motions to amend. *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) ("Although 'leave to amend shall be freely given when justice so requires,' a motion to amend may be denied on 'numerous grounds' such as '. . . futility of the amendment.'").[4]

### 2.    Goble's Third Motion to Amend

First, the magistrate judge denied Goble's third motion to amend because the motion was untimely.  For support, the magistrate judge cited a November 19, 2013 order that stated, "Failure to file a renewed motion for leave to file an amended complaint . . . within [fourteen days] will result in this case proceeding on the Amended Complaint."  We think that the magistrate judge was hypertechnical

---

[4]  Also, the district court denied the first motion to amend because the first proposed complaint "alleged [counts] against all or multiple defendants, without identifying what each defendant did that could plausibly make it liable for the corresponding claim, while other counts d[id] not sufficiently identify a cause of action."  A review of the first proposed complaint confirms the district court's characterization, and Goble has failed to argue otherwise.  Similarly, the magistrate judge denied the second motion to amend because the second proposed complaint failed to "identif[y] what each defendant did that could plausibly make it liable for the corresponding claim against it and continue[d] to include causes of action that are not recognized by governing law.  *See, e.g.*, Count[] . . . XIV ('Obstruction')."  Again, a review of the second proposed complaint confirms the magistrate judge's characterization, and Goble has failed to argue otherwise.

in her interpretation of the November 19 order.  Goble had timely filed a renewed motion (i.e., Goble's second motion to amend, which the magistrate judge had denied), and the November 19 order did not declare that Goble had only one remaining opportunity to amend.  Nonetheless, the magistrate judge's decision to deny Goble's third motion to amend was not an abuse of discretion.  *See Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003) (requiring only one opportunity to amend the complaint before dismissing the complaint with prejudice); *Maynard*, 342 F.3d at 1287 ("Although 'leave to amend shall be freely given when justice so requires,' a motion to amend may be denied on 'numerous grounds' such as 'undue delay . . . .'").

Second, the magistrate judge denied Goble's third motion to amend because Goble failed to demonstrate "good cause" to amend the complaint.  Whether the standard is good cause or the more relaxed Rule 15(a)(2) standard,[5] no reversible error occurred because "[t]he futility of amending [Goble's] complaint would have been appropriate grounds on which to deny the motion to amend."  *Jet, Inc. v.*

---

[5] "Good cause" is required to amend the complaint only after the issuance of the scheduling order.  Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  The district judge did not issue the scheduling order until approximately five months after the magistrate judge applied the "good cause" standard.  (The November 19, 2013 order setting a deadline for Goble to amend the complaint did not constitute a scheduling order, which is comprehensive order subject to the many requirements of Rule 16(b)(1)–(3).)  Specifically, the magistrate judge applied the "good cause" standard on February 19, 2014, but the district judge issued the scheduling order on July 18, 2014.  Rule 15(a)(2) applies before the scheduling order is issued.  Rule 15(a)(2) states, "[A] party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

*Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999).  Like the first and second proposed complaints, the third proposed complaint alleges against the United States only futile claims.  (The third proposed complaint alleges no claims against the SEC.)  Specifically, the third proposed complaint alleges against the United States only conversion, civil conspiracy, gross negligence, and negligence.  Like the comparable claims in the operative complaint, those four claims are futile under 28 U.S.C. § 2680(a) or (h).[6]

## V.  CONCLUSION

We review only the district court's denials of the motions to amend and the district court's dismissal of the claims against the United States and the SEC.  Goble waived the right to have us review anything else.  We **AFFIRM** the district court's dismissals because both the United States and the SEC are immune from suit on the claims alleged in the complaint.  Finally, we **AFFIRM** the denials of the three motions to amend because Goble's three proposed complaints alleged only futile claims against the United States and the SEC.

---

[6]  In passing, Goble argues that the district court "fail[ed] to give [Goble] a meaningful opportunity to understand" the orders dismissing his motions to amend.  Goble identifies no instruction that confused him.  Further, the district court's orders contained simple instructions that Goble refused to follow.  For example, Goble ignored the district judge's instruction that Goble was "**PROHIBITED** from naming . . . the SEC . . . [as a defendant] to FTCA claims."

21